876 So.2d 1285 (2004)
Jeffrey BUCKNER and Debbie Buckner, Appellants,
v.
FAMILY SERVICES OF CENTRAL FLORIDA, INC., et al., Appellees.
No. 5D03-3217.
District Court of Appeal of Florida, Fifth District.
July 23, 2004.
Jerri A. Blair of Lockett & Blair, P.A., Tavares, for Appellants.
Ralph J. McMurphy, Wildwood, for Department of Children and Family Services, for Appellees.
PER CURIAM.
Jeffrey and Debbie Buckner ("the Buckners") appeal from a final order dismissing their petition against the State of Florida, *1286 Department of Children and Families ("DCF").
The Buckners filed suit against DCF individually and as next friend of a minor child, S.H. The Buckners sought declaratory relief, visitation and adoption concerning S.H. According to the petition, the Buckners had previously served as foster parents for S.H. The thrust of the petition is that a strong parent/child relationship developed between them and S.H. and that DCF has refused to approve their adoption of S.H. and has precluded contact between them and S.H.
In dismissing the petition with prejudice for failure to state a cause of action, the trial court ruled that it had no authority: (1) over placement of the child except to review the appropriateness of the adoptive placement, or (2) to interfere with DCF's selection of an adoptive family. The court added that the Buckners failed to allege facts showing that they have legal standing to pursue the action on behalf of S.H.
Our review is de novo. Palumbo v. Moore, 777 So.2d 1177 (Fla. 5th DCA 2001). We conclude that the trial court correctly dismissed the Buckners' petition.
The Buckners' reliance on Kingsley v. Kingsley, 623 So.2d 780 (Fla. 5th DCA 1993), for the proposition that an adult with knowledge of the facts is an appropriate person to file an action such as this as next friend of the minor, S.H., is misplaced. In Kingsley, this court explained the procedure applicable where an adult seeks to file a termination of parental rights petition on behalf of a child. The court stated that an un-emancipated minor does not have the legal capacity to initiate legal proceedings in his or her own name and continued:
This historic concept is incorporated into Florida Rule of Civil Procedure 1.210(b), which provides as follows:
Rule 1.210 Parties
....
(b) Infants or Incompetent Persons. When an infant or incompetent person has a representative, such as a guardian or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person. See also Art. III, § 11(a)(17), Fla. Const.; §§ 743.01-.07, Fla. Stat. (1991) (recognizing the disability of nonage of minors).
The necessity of a guardian ad litem or next friend, the alter ego of a guardian ad litem, to represent a minor is required by the orderly administration of justice and the procedural protection of a minor's welfare and interest by the court and, in this regard, the fact that a minor is represented by counsel, in and of itself, is not sufficient. Brown v. Ripley, 119 So.2d 712 (Fla. 1st DCA 1960). See also Roberts v. Ohio Casualty Insurance Co., 256 F.2d 35, 39 (5th Cir.1958); Zaro v. Strauss, 167 F.2d 218 (5th Cir.1948). Unless a child has a guardian or other like fiduciary, a child must sue by his next friend; however, the next friend does not become a party to the suit. Brown v. Caldwell, 389 So.2d 287, 288 (Fla. 1st DCA 1980). Where the next friend brings the suit, the minor is the real party in interest. Youngblood v. Taylor, 89 So.2d 503, 506 (Fla.1956).
623 So.2d at 783-84.
This court noted that section 39.461(1), Florida Statutes (1991), provided that petitions *1287 for termination of parental rights may be initiated by an HRS attorney or "by any other person who has knowledge of the facts alleged or is informed of them and believes they are true." This court construed the phrase "any other person who has knowledge," to mean:
someone who is in a peculiar position so that such knowledge can be reasonably inferred; for example, the judge familiar with the file, the guardian or attorney for the children, neighbors or friends of the parties who, because of their proximity, would be expected to have such knowledge.
623 So.2d at 784.
The court continued:
This construction contemplates the situation which arose here  that Jerri Blair, an attorney, would file a termination petition on Gregory's behalf. She must do so, however, as his next friend. The next friend may be an attorney, but need not be one. Under this long-recognized and well-tested procedure, the child is the real party in interest, but the courts require that an adult person of reasonable judgment and integrity conduct the litigation for the minor as the latter's next friend.
Id. (footnote omitted).
Kingsley is inapplicable to the instant case. This case does not involve section 39.461(1) and thus does not implicate the statutory language contained therein. Further, this case, unlike the recent case of I.B. v. Department of Children & Families, 876 So.2d 581 (Fla. 5th DCA 2004), does not involve an active adoption proceeding initiated by DCF and pending in the circuit court. In I.B., the child's current foster parents asserted the existence of an agreement to adopt between themselves and DCF and were deemed to have the right to be heard in the pending adoption proceeding. In the instant case, the Buckners themselves are attempting to initiate adoption proceedings.
Acceptance of the Buckners' position would mean that any former foster parent would have standing to sue DCF acting ostensibly on behalf of a dependent minor child who is or at one time had been in the foster parent's custody. This effort by the Buckners to self-appoint themselves as next friends and initiate an action on behalf of a minor in DCF custody would usurp the DCF's statutory authority and interfere with the jurisdiction and procedures of the dependency court. It is the dependency court which is charged under Florida law with protecting the rights and interests of dependent children, section 39.001, Fla. Stat. (2003), and it does so through various devices, including periodic judicial reviews and appointments of guardians ad litem and attorneys ad litem.
The Buckners, as former foster parents of S.H., have not alleged a recognizable basis for initiating litigation as next friend of S.H.
Additionally, the Buckners' allegations, taken as true for purposes of the motion to dismiss, do not state a basis for declaratory relief or for adoption:
S.H. was placed by DCF with the Buckners for a one-year period; a strong parent/child relationship developed between S.H. and the Buckners; S.H. wants to be adopted by the Buckners; S.H. wishes to visit with the Buckners; DCF is not seeking to have S.H. adopted at this time and is not allowing any contact between S.H. and the Buckners.
The Buckners argue that the existence of a strong familial relationship warrants legal protection from the courts. They claim a fundamental liberty interest in the relationship is protected by Article 1 sections 9 (due process) and 23 (right to privacy) *1288 of the Florida Constitution and is implicitly recognized by United States Supreme Court decisions such as Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (abuse, abandonment or neglect which warrants termination of parental rights must be provided by the State by clear and convincing evidence) and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (First and Fourteenth Amendments prevent State from compelling Amish parents to cause their children, who have graduated from the eighth grade, to attend formal high school to age 16). The Buckners add that minors have constitutional rights and must have access to the courts to protect those rights.
Under Florida law, "adoption is not a right; it is a statutory privilege." State, Dep't of Health & Rehabilitative Services v. Cox, 627 So.2d 1210, 1215 (Fla. 2d DCA 1993), affirmed in relevant part, 656 So.2d 902 (Fla.1995).[1] Unlike biological parentage, which proceeds and transcends formal recognition by the State, adoption is wholly a creature of the State. Lofton v. Sec'y of Dep't of Children and Family Serv., 358 F.3d 804 (11th Cir.2004), citing Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (noting that, unlike the natural family, which has "its origins entirely apart from the power of the State," the foster parent-child relationship "has its source in state law and contractual arrangements") and Lindley v. Sullivan, 889 F.2d 124, 131 (7th Cir.1989) ("Because of its statutory basis, adoption differs from natural procreation in a most important and striking way"). See also Dep't of Children & Family Serv. v. B.Y., 863 So.2d 418 (Fla. 4th DCA 2003) (trial court lacks authority to order DCF to approve an adoption in the absence of DCF's consent because decision to grant consent to adoption is firmly reposed by statute in DCF), rev. granted, 870 So.2d 820 (Fla.2004). In Lofton, the Eleventh Circuit concluded section 63.042(3), Florida Statutes (2003), which prevents adoption by practicing homosexuals, is constitutional. In rejecting a due process and equal protection challenge to the statute, the court explained the nature of adoption:
In formulating its adoption policies and procedures, the State of Florida acts in the protective and provisional role of in loco parentis for those children who, because of various circumstances, have become wards of the state. Thus, adoption law is unlike criminal law, for example, where the paramount substantive concern is not intruding on individuals' liberty interests, see, e.g., Lawrence [v. Texas,] 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 [(2003)]; Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); and the paramount procedural imperative is ensuring due process and fairness, see, e.g., Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Adoption is also distinct from such contexts as government-benefit eligibility schemes or access to a public forum, where equality of treatment is the primary concern. See, e.g., Rosengerger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 115 S.Ct. 2510, 123 L.Ed.2d 700 (1995); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, *1289 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). By contrast, in the adoption context, the state's overriding interest is the best interests of the children whom it is seeking to place with adoptive families. In re Adoption of H.Y.T., 458 So.2d 1127, 1128 (Fla.1984) (noting that, in Florida adoption proceedings, "the court's primary duty is to serve the best interests of the child  the object of the proceedings"). Florida, acting parens patriae for the children who have lost their natural parents, bears the high duty of determining what adoptive home environments will best serve all aspects of the child's growth and development.
358 F.3d at 809-10.
The Lofton court, citing the Second District's decision in Cox, stated that the decision to adopt a child is not a private one but a public act which does not partake of a constitutionally-recognized privacy interest.
The Lofton court continued that there is no fundamental right to adopt nor any fundamental right to be adopted. See also Mullins v. Oregon, 57 F.3d 789, 794 (9th Cir.1995) ("[W]hatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest,"); Lindley, 889 F.2d at 131 ("[W]e are constrained to conclude that there is no fundamental right to adopt.") The Lofton court added that there being no fundamental right to adopt or to be adopted, "it follows that there can be no fundamental right to apply for adoption." Id.
While the United States Supreme Court has identified "the interest of parents in the care, custody, and control of their children" as "perhaps the oldest of the fundamental liberty interests recognized by this Court," Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), such constitutionally-recognized liberty interest has not been extended beyond biological families. See Lofton (rejecting claim of homosexual foster parent who claimed fundamental right to family integrity); Drummond v. Fulton County Dep't of Family & Children's Serv., 563 F.2d 1200 (5th Cir.1977) (rejecting claim that foster parent relationship created familial right of privacy protected by Fourteenth Amendment); Cox, 627 So.2d at 1216 ("A person who asks the State for the privilege to adopt does not have a fundamental right arising from an existing family relationship.")
As noted in Lofton, in Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), Justice Brennan acknowledged in dicta that "biological relationships are not [the] exclusive determination of the existence of a family" and noted that "[a]doption, for instance, is recognized as the legal equivalent of biological parenthood." Id. at 844, n. 51, 97 S.Ct. 2094. However, the Eleventh Circuit noted that Smith involved whether foster families possessed a constitutional liberty interest in "the integrity of their family unit" such that the State could not disrupt the family unit without procedural due process. The Smith Court found it unnecessary to reach the constitutional issue but stressed that the parameters of whatever potential liberty interest such families might possess would be defined by state law and the justifiable expectations it created. Id. at 845-46, 97 S.Ct. 2094. Indeed, the Smith Court found the procedures provided under New York law were "adequate to protect whatever liberty interest appellees may have." Id.
The Lofton court explained that under Florida law, neither a foster parent nor a legal guardian could have a justifiable expectation of a permanent relationship with his or her child free from State oversight or intervention. The court added that *1290 even if some expectation of permanency arose, the resulting liberty interest at most would provide procedural due process protection in the event the State were to attempt to remove the child. Smith. The Lofton court concluded:
[A]ppellants' right-to-family-integrity argument fails to state a claim. There is no precedent for appellants' novel proposition that long-term foster care arrangements and guardianships are entitled to constitutional protection akin to that accorded to natural and adoptive families. Moreover, we decline appellants' invitation to recognize a new fundamental right to family integrity for groups of individuals who have formed deeply loving and interdependent relationships. Under appellants' theory, any collection of individuals living together and enjoying strong emotional bonds could claim a right to legal recognition of their family unit, and every removal of a child from a long-term foster care placement  or simply the state's failure to give long-term foster parents the opportunity to adopt  would give rise to a constitutional claim. Such an expansion of the venerable right of parental control would well exceed our judicial mandate as a lower federal court.
In sum, a relationship such as that alleged by the Buckners does not enjoy constitutional protection.
The Buckners' request that the trial court enter an order authorizing their adoption of S.H. likewise fails to state a cause of action under Florida statutory law governing adoption. As explained in C.S. v. S.H., 671 So.2d 260, 268 (Fla. 4th DCA 1996):
Chapter 39 specifically controls the placement for adoption of children where parental rights have been previously terminated. While Chapter 63 authorizes the trial court to finalize the adoption, its provision are triggered only after HRS places and approves a child for adoption as provided in Chapter 39.[2] Thus, we conclude, that the general grant of authority over all adoption proceedings does not supersede HRS's specific authority to select the adoptive parents.
While current foster parents may, in an active adoption proceeding initiated by DCF, have the right to be heard, see I.B., former foster parents do not have the right automatically to be heard or to demand that DCF select them as the child's adoptive parents.
The Buckners argue that DCF violated Chapter 39, Florida Statutes (2003). In particular, they point out that section 39.001(1)(h) provides that one of the purposes of Chapter 39 is:
To ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care for longer than 1 year.
The Buckners point out that S.H. has been in foster care for longer than one year, contrary to the intent of the statute. The Buckners further point out that Chapter 39 provides the court with the authority *1291 to assure that progress is being made toward a permanent adoptive placement. See §§ 39.811, 39.812, Fla. Stat. (2003). Section 39.811(9) provides:
The court shall review the status of the child's placement and the progress being made toward permanent adoptive placement. As part of this continuing jurisdiction, for good cause shown by the guardian ad litem for the child, the court may review the appropriateness of the adoptive placement of the child.
Similarly, section 39.812(4) provides for continued review after custody of a child for subsequent adoption has been given to DCF. The status of the child and the progress being made toward permanent adoptive placement are to be reviewed by the court. The statute also provides for a guardian ad litem's input with regard to the appropriateness of adoptive placement of a child.[3]
The Buckners' contentions are more properly raised by S.H.'s legal representative in judicial review proceedings conducted in the juvenile court pursuant to section 39.811(8), Florida Statutes. This subsection requires the court to hold hearings at six month intervals to review the progress toward permanency "until the adoption of the child is finalized or the child reaches the age of 18 years." The Buckners fail to point to any legislative intent that the above-referenced statutes create a private cause of action. See Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994).
AFFIRMED.
PLEUS, PALMER and ORFINGER, JJ., concur.
NOTES
[1] Adoption statutes, however, are not immune from constitutional scrutiny. See Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) (invalidating on equal protection grounds state law permitting unwed mother but not unwed father to block adoption of their child by withholding consent).
[2] See section 39.813, Florida Statutes (2003), which provides:

39.813 Continuing jurisdiction.  The court which terminates the parental rights of a child who is the subject of termination proceedings pursuant to this chapter shall retain exclusive jurisdiction in all matters pertaining to the child's adoption pursuant to chapter 63.
Section 63.037, Florida Statutes (2003), provides that adoptions where parental rights have been terminated are "governed by s. 39.812 and this chapter."
[3] Although we conclude that the Buckners' lack of standing is a procedural bar to this action, we acknowledge the need for S.H. to have an independent voice in the courtroom. We believe section 39.811(9), Florida Statutes (2003) contemplates that S.H. would have a guardian ad litem after the termination of parental rights. However, we recognize that in some instances, the guardian ad litem is either discharged after the termination proceedings conclude, or the lack of sufficient guardians ad litem prevent the court from receiving this valuable input. Nonetheless, S.H. deserves a voice in these proceedings, particularly when she, or her legal representative, may have views that differ from those of DCF.

We believe, and DCF conceded at oral argument, that the Buckners have the right to ask the dependency court to recognize them as "participants," as defined by Florida Rule of Juvenile Procedure 8.210(b) for the limited purpose of seeking the appointment of an independent guardian ad litem for S.H. While adoption is a creature of statute, and prospective adoptive parents have no constitutional protections in general, S.H., as the subject of these proceedings, has the right to access the courts and the right of due process. Those rights are merely illusory if she has no one speaking on her behalf.
DCF and the trial court are required to focus on the best interests of this child. Here, DCF is alleged to have taken the position that adoption is not in S.H.'s best interest at this time. While DCF may be right, an issue we cannot determine based on the record before us, it may also be wrong. S.H. deserves the opportunity to contest DCF's judgment regarding her fate, if appropriate.