EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Teodoro López Rivera por sí y junto a Norma I. Pagán Núñez, et als.<br><br>Demandantes-peticionarios<br><br>vs.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Demandado-recurrido | Certiorari<br><br>2005 TSPR 102<br><br>164 DPR \_\_\_\_ |

Número del Caso: CC-2003-436

Fecha: 11 de julio de 2005

Tribunal de Apelaciones:

Circuito Regional V de Ponce y Aibonito

Juez Ponente:

Hon. Nestor S. Aponte Hernández

Abogado de la Parte Peticionaria:

Lcdo. Carlos G. Barreto Ríos

Oficina del Procurador General:

Lcda. Vannessa Ramírez
Procuradora General Auxiliar

Materia: Inconstitucionalidad de Ley

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Teodoro López Rivera por sí
y junto a Norma I. Pagán
Núñez, et als.

     Demandantes-peticionarios

                              CC-2003-436     CERTIORARI

       vs.

Estado Libre Asociado de Puerto
Rico

     Demandado-recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

En San Juan, Puerto Rico a 11 de julio de 2005

El 23 de noviembre de 1999, Teodoro López Rivera y los hermanos Stanley y Lennin Ocasio Pagán, presentaron ante el Tribunal de Primera Instancia, Sala Superior de Ponce, una petición ex-parte de adopción[1] y de cambio de apellido. Estos dos últimos son hijos, ambos mayores de edad, de un primer matrimonio de Norma Ileana Pagán Núñez, esposa de López Rivera. En la referida petición de adopción, López Rivera

---

[1] *Ex-parte Teodoro López Rivera y otros*, Civil Núm. JEX99-0170(406). En esta también comparecieron como partes Norma Ileana Pagán Núñez por sí y en representación de sus hijas menores de edad, Noraine y Norashely López Pagán; y Maria Eugenia Gratacós Loyola en representación de su hijo menor de edad, Lennin Michael Ocasio Gratacós.

solicitó adoptar a los hermanos Stanley y Lennin Ocasio Pagán, quien al momento de presentarse esta petición había contraído matrimonio con Maria Eugenia Gratacós Loyola. Por su parte, los hermanos Ocasio Pagán solicitaron del Tribunal que, de autorizarse la adopción, se les cambiara el apellido a López Pagán.[2]

Así las cosas, la Procuradora Especial de Relaciones de Familia presentó su posición mediante escrito a esos efectos; alegó que el Artículo 132 del Código Civil, 31 L.P.R.A. sección 533, según enmendado por la Ley Núm. 8 de 19 de enero de 1995, conocida como la Ley de Adopción, prohíbe la misma cuando la persona que va a ser adoptada es casada, razón por lo cual Lennin no podía ser adoptado. En cuanto a Stanley, señaló la referida funcionaria, que aun cuando éste era mayor de edad, al no estar casado, procedía evaluar si vivía con el adoptante, López Rivera, desde antes de cumplir los dieciocho (18) años de edad, y si dicha situación existía aun a la fecha de la petición.

Los peticionarios replicaron; plantearon la inconstitucionalidad del mencionado Artículo 132 del Código Civil, el cual prohíbe que personas mayores de edad y personas casadas, o que hubieren estado casadas, puedan ser adoptadas. Alegaron, además, que dicha disposición constituye una clasificación sospechosa por razón de

---

[2] El matrimonio de Ocasio Pagán y Gratacós Loyola procreó un hijo de nombre de Lennin Michael Ocasio Gratacós. En la petición de adopción también se solicitó el cambio de apellido de éste a López Gratacós.

status civil. Por lo cual, sostuvieron que ésta debía ser analizada utilizando el criterio de "escrutinio estricto".

El foro primario —luego de realizar un estudio de las alegaciones de los peticionarios y de la Procuradora Especial de Relaciones de Familia— decidió abstenerse de considerar el planteamiento de inconstitucionalidad tras determinar que procedía la aplicación de la doctrina de autolimitación judicial, la cual establece que los tribunales no deben adjudicar cuestiones constitucionales a no ser que ello sea imprescindible.[3]

En cuanto al peticionario Stanley Ocasio Pagán, el foro de instancia determinó que éste, por no estar casado, <u>podría</u> cualificar para adopción si se cumplía con la excepción contenida en el inciso (2) del referido Artículo, esto es, si se demostraba que éste residía en el hogar de López Rivera desde antes de cumplir los 18 años de edad y que esta situación subsistía al momento en que se presentó su solicitud de adopción y cambio de apellido.[4]

---

[3]    Acorde con lo expresado, dictó "sentencia parcial", denegando la solicitud de los peticionarios sobre decreto de inconstitucionalidad del Art. 132 del Código Civil, ante.

[4]    Mediante sentencia dictada el 6 de junio de 2000, el Tribunal de Primera Instancia declaró Ha Lugar la petición de adopción de Stanley ya que era de aplicación la excepción contenida en el Artículo 132 inciso (2) y ordenó la inscripción de la adopción en el Registro Demográfico y que en esta apareciera el nombre de este último como Stanley López Pagán, hijo de Norma Ileana Pagán Nuñez y Teodoro López Rivera. <u>Esta sentencia advino final y firme</u>.

En cuanto a Lennin Ocasio Pagán, el referido foro determinó que la misma no procedía ya que éste era un hombre casado; señaló que, por disposición expresa del Artículo 132 del Código Civil, ante, éste no podía ser adoptado por el peticionario Teodoro López Rivera. Por tal razón denegó, además, el cambio de apellido de éste y de su hijo, Lennin Michael Ocasio Gratacós.

Insatisfechos con esta determinación, los peticionarios acudieron --vía recurso de apelación-- ante el Tribunal de Apelaciones. El referido foro apelativo, acogiendo el recurso como uno de *certiorari* por tratarse de un procedimiento ex parte, dictó sentencia desestimatoria del mismo por haberse presentado fuera del término jurisdiccional de treinta (30) días.

Así las cosas, Teodoro López Rivera, y los hermanos Stanley y Lennin Ocasio Pagán presentaron demanda contra el Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia, Sala Superior de Ponce, iniciando, de este modo, un nuevo procedimiento judicial.[5] En la misma alegaron, en síntesis, que el Artículo 132 del Código Civil, ante, era inconstitucional por violar la igual protección de las leyes en cuanto creaba una clasificación sospechosa por razón de status civil. Por otro lado, alegaron que el denegar la adopción por el hecho de que

---

[5] Realmente, Stanley Ocasio Pagán, esto es, Stanley López Pagán --ya que su petición de adopción fue decretada mediante sentencia a esos efectos, la cual advino final y firme-- no tiene legitimación ("standing") para radicar esta demanda.

una persona estuviese casada violaba el derecho a la intimidad por constituir una intromisión del Estado en derechos personalísimos. Arguyeron, que las leyes que restringen el derecho a decidir, relacionadas al matrimonio, divorcio o relaciones familiares, estaban sujetas al criterio de "escrutinio estricto".

El Secretario de Justicia de Puerto Rico solicitó la desestimación de la demanda radicada, alegando que la sentencia desestimatoria, dictada por el Tribunal de Apelaciones tenía el efecto de cosa juzgada en su modalidad de impedimento colateral por sentencia. En la alternativa, alegó que conforme lo resuelto por el Tribunal de Primera Instancia, en el caso original de adopción, el tribunal debía seguir la doctrina de abstención. En cuanto a los méritos de la impugnación constitucional por violar la igual protección de las leyes alegó que la clasificación entre adoptandos, casados y no casados, no guardaba relación con el discrimen "por origen y condición social" y que, por tanto, procedía analizar la razonabilidad de la clasificación, no bajo el escrutinio estricto, sino bajo el "escrutinio tradicional de nexo racional".

Los demandantes se opusieron a la desestimación solicitada, reiterarando su posición sobre la inconstitucionalidad del Artículo 132, ante, señalando que el fundamento para no conceder la adopción constituía una intromisión del Estado en derechos personalísimos, por lo

que el estatuto impugnado debía ser analizado bajo el escrutinio estricto. Sostuvieron, que si la decisión de contraer matrimonio está protegida constitucionalmente bajo el derecho a la intimidad, la decisión de adoptar a aquellos que se han ganado un sitial como hijos y como padres no puede estar menos protegida.

El foro primario, aun cuando reconoció que, bajo la doctrina de abstención judicial, los tribunales no deben entrar a determinar la validez constitucional de una ley si en el caso existen otros planteamientos no constitucionales a base de los cuales se pueda dictar sentencia, determinó que ésta no era la situación en el caso que tenía ante su consideración y que, por tanto, el planteamiento constitucional debía ser atendido y resuelto.

El Tribunal de Primera Instancia resolvió, mediante resolución a esos efectos, que habiéndose reconocido en la esfera federal que el matrimonio constituye una expresión del derecho a la intimidad, no tenía duda que ello debía reconocerse, además, en relación con el derecho que tiene un individuo para adoptar como su hijo(a) a una persona, crear o ampliar su núcleo familiar y establecer lazos de amor, convivencia y dirección; determinó, en consecuencia, que el derecho a adoptar está protegido por el derecho fundamental a la intimidad. Dicho foro concluyó que el Artículo 132 del Código Civil violenta un derecho fundamental, por lo que debe aplicarse un escrutinio

estricto e imponerse al Estado el deber de probar cual es el interés público apremiante que justifique la limitación a ese derecho.

Inconforme con esta determinación, el Procurador General acudió, vía *certiorari*, ante el Tribunal de Apelaciones. Alegó, en síntesis, que el Tribunal de Primera Instancia incidió al determinar que el Artículo 132 del Código Civil violaba tanto el derecho a la intimidad como la igual protección de las leyes y al determinar que éste debía ser analizado mediante escrutinio estricto. Reiteró, además, su posición en cuanto al planteamiento de cosa juzgada en su modalidad de impedimento colateral por sentencia.

El foro apelativo intermedio determinó que en el caso ante sí no era de aplicación la doctrina de cosa juzgada ya que en el caso original de adopción, el foro primario decidió abstenerse de considerar el planteamiento de inconstitucionalidad y que, por tanto, no había una determinación final en cuanto a este aspecto. Por otro lado, y acogiendo los planteamientos del Procurador General, determinó que la prohibición de adoptar personas casadas no representaba una intromisión indebida en los derechos personales de las partes y que tratándose la adopción de un privilegio concedido por ley –– y no un derecho fundamental–– como determinó el foro primario, le correspondía al Estado establecer todas las medidas que garantizaran la protección y bienestar de los menores. Por

consiguiente, determinó que la clasificación hecha por el Estado en cuanto a casados y no casados para efectos de quiénes pueden ser adoptados no constituye una clasificación sospechosa y que el derecho de adopción no está protegido por el derecho fundamental a la intimidad. Por consiguiente, dictó sentencia revocando la resolución recurrida y le ordenó al foro primario evaluar la clasificación impugnada bajo el escrutinio tradicional de nexo racional.

Inconformes, los demandantes recurrieron, vía certiorari, ante este Tribunal, imputándole al foro apelativo intermedio haber errado al:

> ... imponer la utilización del escrutinio tradicional de nexo racional cuando la prohibición establecida en la Ley violenta derechos fundamentales adquiridos bajo el Artículo II, secciones 1 y 8 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico.

> ... imponer la utilización del escrutinio tradicional de nexo racional cuando existe y debido a la prohibición establecida en la Ley una crasa violación a derechos fundamentales adquiridos bajo el Artículo II, sección 7 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico.

Expedimos el recurso. Contando con la comparecencia de todas las partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

**A. El derecho a la intimidad**

La Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 257, dispone que:

"La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana."

Por su parte, la Sección 8 del Artículo II de la Constitución, dispone que:

"Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada y familiar."

En Puerto Rico, el derecho a la intimidad y la protección a la dignidad del ser humano tienen un origen constitucional explícito. Rexach v. Ramírez Vélez, res. el 15 de junio de 2004, 2004 T.S.P.R. 97.

Nuestra jurisprudencia, ciertamente, ha considerado que el derecho a la intimidad goza de enorme valor en nuestro ordenamiento constitucional. Pérez Vda. De Muñiz v. Criado Amunategui, res. el 19 de junio de 2000, 2000 T.S.P.R. 92. A tono con lo anterior, hemos reconocido que los ciudadanos tienen un derecho fundamental a la intimidad. Arroyo v. Rattan Specialties, Inc., 117 D.P.R.

35 (1986); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978).

Los derechos a la dignidad, integridad personal e intimidad, los cuales han sido reconocidos bajo la Constitución del Estado Libre Asociado de Puerto Rico, son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituyen una crucial dimensión en los derechos humanos. Su protección es necesaria para que se pueda lograr una adecuada paz social o colectiva. Arroyo v. Rattan Specialties, Inc., ante.

La disposición constitucional del derecho fundamental a la intimidad impone al Estado una función dual: abstenerse de actuar en una forma que viole el ámbito de autonomía e intimidad individual y actuar de forma positiva en beneficio del individuo. Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998).

Así pues, hemos reconocido que el derecho a la vida privada y familiar, protegido por el Artículo II, Secciones 1 y 8 de nuestra Constitución, ante, opera ex propio vigore, y puede hacerse valer entre personas privadas al eximirlas del requisito de acción estatal. Este derecho constitucional impone al Estado, y a toda persona, el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos. Colón v. Romero Barceló, 112 D.P.R. 573 (1978). En general puede afirmarse que están protegidos dos intereses fundamentales: uno es el interés individual de evitar la divulgación de asuntos

personales, y el otro es el interés de poder tomar decisiones importantes independientemente. Véase: Arroyo v. Rattan Specialties,Inc., ante, pág. 75.

A tono con lo anterior, tanto en la jurisdicción federal como en la nuestra, se ha reconocido como parte del derecho a la intimidad, la facultad de las personas para tomar ciertas decisiones sin que el Estado intervenga con ellas. La jurisprudencia de ambas jurisdicciones establece que este derecho se lesiona, entre otras instancias, cuando se limita la facultad de un individuo de tomar ciertas decisiones personales, familiares o íntimas. Pueblo v. Duarte Mendoza, 109 D.P.R. 596 (1980); Figueroa Ferrer v. E.L.A., ante; Griswold v. Connecticut, 381 U.S. 479 (1965); Eisenstadt v. Baird, 405 U.S. 438 (1972); Carey v. Population Services International, 431 U.S. 678 (1977).

Al aplicar el debido proceso de ley a las relaciones familiares, el Tribunal Supremo de los Estados Unidos ha interpretado que dentro del concepto "libertad" de la Decimocuarta Enmienda está incluida la libertad de los ciudadanos de tomar ciertas decisiones personales en el ámbito de la vida privada familiar. Lassiter v. Department of Social Servs., 452 U.S. 18, 38 (1981); Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923); Skinner v. Oklahoma, 316 U.S. 535 (1942).

La jurisprudencia federal ha reconocido, de manera explícita, que el derecho fundamental a la intimidad,

protegido bajo la cláusula de debido proceso de ley, envuelve una serie de decisiones que un individuo puede tomar sin que el Estado pueda interferir en estas de forma injustificada. Entre éstas se encuentran las decisiones personales relacionadas al matrimonio, la procreación, el uso de contraceptivos, las relaciones familiares, y la crianza y educación de los hijos. Si un estatuto interfiere con alguna de estas decisiones --protegidas por el derecho fundamental a la intimidad-- estará sujeto al escrutinio estricto y sólo podrá sostenerse si el estatuto está dirigido específicamente para adelantar un interés estatal apremiante. Carey v. Population Services International, ante. A estos efectos el Tribunal Supremo de los Estados Unidos ha expresado que, en aquellas circunstancias que envuelvan derechos fundamentales, cualquier legislación que limite los mismos sólo podrá ser justificada por un interés estatal apremiante y que la legislación debe restringirse únicamente a proteger ese interés. Griswold v. Connecticut, ante.

Lo anterior no significa, sin embargo, que el Estado no pueda interferir en la vida privada y familiar de la persona bajo ninguna circunstancia. Lo que significa es que, cuando se trate de derechos fundamentales, el Estado tiene que limitar esta interferencia al mínimo, de modo que ésta no se convierta en una limitación irrazonable en la facultad de un individuo de tomar decisiones personales o una intromisión injustificada en ámbitos privados

protegidos. Habiendo reconocido que el derecho a la intimidad es uno fundamental, las actuaciones gubernamentales que afecten ese derecho sustancialmente estarán sujetas al escrutinio estricto. Cuando el Estado intervenga en estos ámbitos protegidos tendrá que demostrar que existe un interés apremiante que justifique la intromisión o limitación y que dicha limitación es necesaria para alcanzar dicho interés.

En nuestro ordenamiento las relaciones familiares han sido examinadas en el contexto del derecho a la intimidad. Rexach v. Ramírez Vélez, ante. A esos efectos, hemos señalado que en la sociedad democrática organizada alrededor de los derechos fundamentales del hombre, el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocionales como lo son las relaciones de familia. La intromisión en la vida privada sólo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado. García Santiago v. Acosta, 104 D.P.R. 321, 324 (1975).

## B. La igual protección de las leyes

La Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, establece que:

> "Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la

igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo".

La igual protección de las leyes se funda en el principio cardinal de "trato similar para personas similarmente situadas". Esto significa que el gobierno puede hacer clasificaciones entre las personas para cualesquiera propósitos legítimos. Sin embargo, al realizarlas tiene que observar esa norma básica. R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, Vol. II, págs. 1081-1082; Pérez Román v. Proc. Esp. Rel. Fam., ante.

El fundamento de este precepto surge de la concepción básica de que para gobernar una sociedad tan compleja y variada, en la cual existen distintos intereses individuales y grupales, y diversas relaciones sociales, es necesario establecer clasificaciones. "En otras palabras, es imposible gobernar cualquier sociedad y en especial una sociedad moderna sin instituir clasificaciones entre personas, sin construir desigualdades que favorezcan a algunos y perjudiquen a otros." Serrano Geyls, *op. cit*. pág. 1081.

El principio constitucional de la igual protección de las leyes no exige que se dé un trato igual a todos los ciudadanos siempre. Pueblo v. Matías Castro, 90 D.P.R.

528, 531 (1964); Alicea v. Córdova, 117 D.P.R. 676, 696 (1986). El Estado puede hacer clasificaciones entre las personas sin infringir dicho principio siempre y cuando la clasificación sea razonable y con miras a la consecución o protección de un interés público legítimo. Zachry International v. Tribunal Superior, 104 D.P.R. 267, 277 (1975).

Hemos señalado que no toda discriminación viola el precepto de igualdad ante la ley, ya que las normas que nutren este principio no exigen un trato igual para todos los ciudadanos, aunque sí prohíben un tratamiento desigual injustificado. *Ibid*. Por consiguiente, según expresa el profesor Serrano Geyls, el problema central que plantea la aplicación de la igual protección de las leyes es el de diseñar normas que permitan al gobierno establecer clasificaciones pero que a la vez protejan a las personas contra desigualdades indebidas o irrazonables u odiosas (invidious). Serrano Geyls, op. cit pág. 1081.

Bajo la igual protección de las leyes cuando un tribunal en Puerto Rico se enfrenta a un análisis constitucional sobre la razonabilidad de una clasificación legislativa, dicho foro deberá usar uno de los dos criterios o escrutinios establecidos jurisprudencialmente para ese fin, a saber: el escrutinio estricto o el escrutinio tradicional mínimo o de nexo racional. Véase: Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1983); León Rosario v. Torres, 109 D.P.R. 804 (1980).

La doctrina prevaleciente en Puerto Rico sobre igual protección de las leyes le reconoce al Estado una amplia latitud en lo referente al establecimiento de clasificaciones relativas a cuestiones sociales y económicas. Hemos resuelto que en relación con estas cuestiones el escrutinio a utilizarse por los tribunales al examinar las leyes que establecen clasificaciones en estos campos lo es el de nexo racional o tradicional mínimo. Vélez v. Srio. de Justicia, ante. Al amparo de dicho escrutinio las clasificaciones establecidas por el legislador no se declararán inválidas a menos que sean claramente arbitrarias y no exista un interés legítimo del Estado en la clasificación cuestionada o que no pueda establecerse un nexo racional entre la clasificación impugnada y el interés estatal. Véase: León Rosario v. Torres, ante.

Bajo el escrutinio racional, la ley impugnada goza de una presunción de constitucionalidad. Esto coloca el peso de rebatir la misma en la persona que impugna la validez de la legislación. Zachry International v. Tribunal Superior, ante, pág. 277.

Para que se justifique la utilización del escrutinio riguroso o estricto, el tribunal tiene que identificar si la clasificación hecha afecta algún derecho fundamental de la persona o si establece alguna clasificación sospechosa que no guarde relación con la habilidad o aptitud de las personas afectadas por la clasificación. Zachry

International v. Tribunal Superior, ante, a las págs. 276-277. Si se identifican esas clasificaciones, la legislación se presume inconstitucional y le corresponde al Estado probar la existencia de un interés apremiante que las justifique.

II

La adopción es un acto jurídico solemne, el cual supone la ruptura total del vínculo jurídico-familiar de una persona con su parentela biológica y la consecuente filiación de ésta con aquel o aquellos que han expresado la voluntad de que legalmente sea su hijo. Virella Archilla v. Procurador Especial de Relaciones de Familia, res. el 7 de agosto de 2001, 2001 T.S.P.R. 114; Feliciano Suárez, Ex parte, 117 D.P.R. 402 (1986). Bajo esta institución, se equipara la relación filiatoria adoptiva con aquella que se produce naturalmente, con iguales deberes y obligaciones jurídicas y sociales. Zapata Saavedra v. Zapata Martínez, res. el 20 de febrero de 2002, 2002 T.S.P.R. 24.

En Puerto Rico la adopción, como acto jurídico, está rigurosamente reglamentada por el Código Civil en su dimensión sustantiva, y el Código de Enjuiciamiento Civil en su dimensión procesal, hoy Ley de Procedimientos Legales Especiales. Feliciano Suárez, Ex parte, 117 D.P.R. 402 (1986), Virilla Archilla v. Proc. Esp. Rel. Fam., ante.

En su dimensión procesal, la Ley Núm. 9 de 19 de enero de 1995, 32 L.P.R.A. secs. 2699, *et seq.*, enmendó las disposiciones de la Ley de Procedimientos Especiales en materia de adopción. Según su exposición de motivos, dicha Ley se aprobó para superar los "serios escollos y dilaciones innecesarias" que caracterizaban el procedimiento de adopción anterior a esta legislación. La misma declara que, "[e]s un derecho inalienable de los niños el poder vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres". Expresa, además, que ante los diversos males sociales que atentan contra el bienestar de los menores, la intención legislativa va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados, para que mediante los mecanismos de adopción éstos puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral.

Mediante la aprobación de esta legislación, la Asamblea Legislativa pretendió ampliar y facilitar la utilización del mecanismo de adopción de forma tal que pudiera ser utilizado más ampliamente, y de forma más rápida, por personas que desearan acoger como padres en el seno de su hogar a menores e incapacitados en estado de desamparo y abandono.

Al expresarnos sobre el propósito que persigue la institución jurídica de la adopción hemos expresado que la

misma cumple varios fines sociales de fundamental importancia para nuestra sociedad contemporánea, pero, principalmente, el propósito de darle a los niños sin padres la oportunidad de criarse en un hogar donde los puedan atender debidamente, y facilitar a los padres sin hijos la oportunidad de tenerlos y asegurar así la continuidad de su familia. M.J.C.A. v. J.L.E.M., 124 D.P.R. 910, 916 y 922 (1989); Feliciano Suárez, Ex parte, ante, a la pág. 409.

Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados. El propósito de la adopción debe ser alcanzado sin que de ninguna manera se sacrifique el propósito primordial de dicha institución, el bienestar del menor. Véase: Zapata Saavedra v. Zapata Martínez, ante. Esto es, la adopción debe servir el propósito de proteger al menor. Véase: Ex Parte, J.A.A., ante.

Por otro lado, mediante la Ley Núm. 8 de 19 de enero de 1995, la Asamblea Legislativa enmendó el Capítulo V, Título VI, del Libro Primero del Código Civil, que regula los aspectos sustantivos de la adopción en Puerto Rico. En su exposición de motivos dispone que "para implantar la nueva política pública en materia de adopción y de protección de los menores, para cuyo beneficio y protección se adopta esta nueva política, se hace indispensable enmendar el Código Civil en aquello que incida sobre la institución de la adopción, ...".

A estos efectos la exposición de motivos de la referida pieza legislativa expresa que es imperativo flexibilizar la institución de la adopción para que ésta pueda ser ampliamente utilizada por personas que desean adoptar menores de edad. Dispone que los niños de Puerto Rico merecen tener la oportunidad de que sus vidas se desarrollen al calor de un hogar, sintiendo el amor de unos padres. Expresa, además, que la institución de la familia es el pilar principal de nuestra sociedad, y que por tanto, hay que brindarle a esos niños la oportunidad de formar parte de un seno familiar.

De este modo, vemos que el propósito principal de las enmiendas a las disposiciones del Código Civil y de la Ley de Procedimientos Especiales en materia de adopción fue "flexibilizarlas", pero en relación con menores de edad. Por esta razón, la exposición de motivos de la referida Ley expresa que se adoptó "una de las legislaciones más avanzadas y liberales de todos los países occidentales en materia de adopción siendo su espíritu claramente autóctono, ajustado a la realidad de la vida actual de la sociedad puertorriqueña, y protector de bienestar y conveniencia del adoptando". Ambas legislaciones tuvieron idéntico propósito: utilizar el mecanismo de adopción para brindarle hogares a menores que así lo necesitaran.

Es menester señalar que según las Leyes Núm. 85 y 86 de 15 de junio de 1953, leyes que regulaban la adopción anterior a la aprobación de las Leyes Núm. 8 y 9 de 1995

vigentes, dicha institución fue considerada como una de carácter esencialmente social dirigida primordialmente a dar padres <u>a niños</u> que no los tuvieren, o cuyos padres no los quisieren, o no los pudieren atender debidamente. <u>Ex parte, J.A.A.</u> ante, a la pág. 558.

Por otro lado, hemos expresado que siendo nuestra ley de adopción una creación autóctona, <u>se impone la necesidad de siempre buscar la intención legislativa</u>, para poder evaluar la determinación de autorizar o no autorizar una adopción conforme a los principios generales que inspiran la ley. <u>Ex parte, J.A.A.</u>, 104 D.P.R. 551, 556 (1976).

En virtud de lo antes expuesto, analizamos el Artículo 132 del Código Civil según enmendado por la Ley Núm. 8 de 19 de enero de 1995, ante, y cuya constitucionalidad se impugna en el presente caso. El mismo dispone, en lo aquí pertinente, que:

> Quiénes podrán ser adoptados; quiénes no podrán serlo. (31 L.P.R.A. sec. 533)
>
> (1) Podrán ser adoptados los menores de edad no emancipados y los menores de edad emancipados por decreto judicial o por concesión de padre, madre o padres con patria potestad.
>
> (2) <u>No podrán ser adoptados</u>:
>
> Las personas que hayan cumplido la mayoría de edad a la fecha de un decreto de adopción aún cuando fueren menores de edad al presentarse la petición de adopción no podrán ser adoptados. No obstante, podrá ser adoptado un menor de edad emancipado que no hubiese contraído matrimonio o una persona mayor de edad siempre y cuando medie algunas de las siguientes circunstancias:
>
> (a) Cuando el adoptante [sic] hubiere residido en el hogar de los adoptantes desde antes de haber

cumplido la edad de dieciocho (18) años, y dicha situación hubiere continuado existiendo a la fecha de la presentación de la petición de adopción.

(b) Cuando el adoptado sea un menor emancipado que nunca hubiere contraído matrimonio.

(3) Las personas casadas o que hubieren estado casadas, aunque sean menores de edad.

(...)

La adopción decretada en contravención a lo dispuesto en esta sección será nula. (énfasis suplido y citas omitidas).

El artículo de ley antes transcrito reserva la adopción para menores de edad no emancipados y menores de edad emancipados siempre y cuando los mismos no hubiesen contraído matrimonio. El mismo excluye expresamente, como posibles adoptandos, a aquellas personas que hubiesen contraído matrimonio o que estén casadas, aunque sean menores de edad. Como vemos, el mismo establece una prohibición absoluta en cuanto a las personas que estén casadas o que hubieren estado casadas ya que las mismas, bajo ninguna circunstancia, podrán ser adoptadas.

Por otro lado, la referida disposición de ley dispone, como regla general, que las personas mayores de edad tampoco podrán ser adoptadas. Esta disposición tiene como única excepción lo expresado en el Inciso (2) del mismo, el cual establece que una persona mayor de edad podrá ser adoptada si se demuestra que ésta hubiese residido con el adoptante desde antes de cumplir los

dieciocho (18) años de edad y si esta situación subsiste al momento de solicitarse la adopción.

Respecto a la interpretación del conjunto de normas sustantivas y procesales de la adopción, reiteradamente hemos señalado que, las mismas deben ser interpretadas liberalmente a favor del adoptando. Sin embargo, enfáticamente hemos advertido que "la liberalidad en la interpretación no puede conducirnos a violentar la intención legislativa, ni a consagrar absurdos." Véase: Virella Archilla v. Procurador Especial de Relaciones de Familia, ante; Zapata Saavedra v. Zapata Martínez, ante.

Con este trasfondo en mente, atendemos los planteamientos constitucionales hechos por los peticionarios en cuanto a cuál es el escrutinio aplicable al momento de examinar la constitucionalidad del Artículo 132 del Código Civil, ante. Los peticionarios argumentan que la prohibición de adoptar personas casadas viola el derecho fundamental a la intimidad al infringir el derecho que tiene una persona de adoptar como hijo a quien así se estima. Asimismo, alegan que para efectos de la adopción, la distinción entre personas casadas y no casadas implica un trato desigual injustificado y una clasificación sospechosa que violenta la doctrina constitucional de la igual protección de las leyes.

III

A los fines de resolver cuál es el escrutinio que debe utilizarse para analizar la controversia ante nos

--si el estricto o el tradicional mínimo de nexo racional-- corresponde que resolvamos si la decisión de adoptar a alguien como hijo constituye un derecho fundamental cobijado bajo el derecho a la intimidad, y, si el Artículo 132 del Código Civil, ante, en cuanto prohíbe que las personas casadas o que hubieren estado casadas puedan ser adoptadas, establece una clasificación arbitraria o caprichosa que viole la igual protección de las leyes.

Tal y como señaláramos anteriormente, el derecho a la intimidad reconoce ciertos ámbitos de la vida privada familiar de los ciudadanos en los cuales el Estado no debe inmiscuirse o cuya intromisión debe ser leve e insustancial. Dentro de la protección al derecho a la intimidad, se encuentra la facultad del individuo de tomar ciertas decisiones con respecto a su vida íntima privada o familiar. En reconocimiento de la autonomía individual, el Estado debe abstenerse de aprobar legislación que lesione la facultad y el interés de las personas de poder tomar estas decisiones independientemente. Entre las decisiones protegidas por el derecho a la intimidad se encuentran el derecho a contraer matrimonio, de procrear, y de decidir con respecto a la crianza y educación de los hijos. Estos derechos también han sido reconocidos como fundamentales. Cuando se trata de decisiones o derechos protegidos y reconocidos por el derecho fundamental a la intimidad, el

Estado no puede aprobar legislación que interfiera sustancialmente y de forma irrazonable con estos.

En nuestra jurisdicción hemos expresado que "[i]ndudablemente en Puerto Rico los padres y madres tienen un derecho fundamental a criar, cuidar y custodiar a sus hijos, protegido tanto por la Constitución del Estado Libre Asociado de Puerto Rico como por la Constitución de los Estados Unidos. No obstante, estos derechos pueden ceder ante intereses apremiantes del Estado en lograr el bienestar de los menores". Rexach v. Vélez, ante.

En el presente caso, el foro primario determinó que bajo el derecho fundamental a la intimidad, el derecho de una persona de adoptar como hijo a quien así se quiere debe gozar de la misma protección que otros derechos fundamentales como por ejemplo, el derecho a contraer matrimonio. Por tal razón, determinó que la legislación impugnada debía ser analizada utilizando el escrutinio estricto.

En aras de analizar esta determinación, y a falta de pronunciamientos previos nuestros sobre el asunto[6], de forma ilustrativa, señalamos lo resuelto en Lindley v.

---

[6] Es menester señalar que en los casos anteriores en materia de adopción, no abordamos si en efecto, la decisión de adoptar es un derecho protegido por el derecho fundamental a la intimidad; esto es, si el derecho de adoptar es fundamental y que, por tanto, merezca protección constitucional teniendo como resultado que el Estado no pueda interferir o limitarlo irrazonablemente.

Sullivan, (C.A.7 Ill.) 889 F2d 124, (1989). En este caso, los allí apelantes alegaron que el derecho de una pareja a adoptar era un derecho constitucional fundamental. En este caso se abordó el tema de si la protección constitucional a la intimidad protegía el derecho a adoptar. Se expresó que el procedimiento de adopción es una figura creada por las leyes estatales y que los derechos de los padres y sus expectativas en torno a la adopción han sido históricamente gobernadas por el ejercicio legislativo. Así, determinaron que todos los deberes y derechos relacionados con la adopción son estatutarios. Por el contrario, los derechos a contraer matrimonio y a la procreación no nacen de las leyes que promulgue el Estado, sino que se encuentran arraigados en los derechos humanos intrínsecos. Los derechos de adopción de una pareja tienen que ser reconciliados con el interés estatal en velar por el bienestar del menor, al ser éste su interés primordial. En conclusión, el tribunal apelativo federal dispuso en este caso que siendo el procedimiento de adopción uno condicionado a una serie de variables sobre las cuales el Estado tiene completo control, la adopción es más un privilegio estatutario que un derecho. Por tal razón determinó que no existe un derecho fundamental a adoptar que deba ser protegido bajo el derecho a la intimidad.[7]

---

[7] Esta determinación ha sido sostenida por otros tribunales apelativos estatales. Véanse, por ejemplo, Buckner v. Family Services of Cent. Florida, Inc., (Fla. App. 5 Dist) 876 So.2d 1285, (2004); Lofton v. Kearney,

Por otro lado, en <u>Pérez Vega</u> v. <u>Procurador Especial de Relaciones de Familia</u>, ante, expresamos que debido al interés apremiante del Estado en garantizar el bienestar del menor, <u>la adopción es una institución civil meticulosamente regulada por la legislación sobre la materia, tanto en su aspecto sustantivo como en lo procesal.</u>

Aun cuando el propósito principal de la Ley de Adopción es flexibilizar y expeditar el procedimiento de adopción, ello no implica un menoscabo en la intervención del Estado; por el contrario, la Asamblea Legislativa reconoce como principio rector la <u>intervención intensa del Estado</u> para asegurar, en la medida en que sea posible, el bienestar y conveniencia del menor. <u>Zapata Saavedra</u> v. <u>Zapata Martínez</u>, ante.[8]

_____

(S.D. Fla.)157 F.Supp.2d 1372,(2001). Sin embargo, sostenemos que sólo tomamos estos casos por su efecto persuasivo, sin que de ninguna manera controlen nuestra decisión en el presente caso.

[8] A modo de ejemplo, señalamos, que en el aspecto procesal, el Artículo 3 de la Ley Núm. 9, 32 L.P.R.A. sec. 2699(b) dispone que el peticionario deberá presentar una petición de adopción, bajo juramento, en la Sala del Tribunal de Primera Instancia correspondiente al lugar de residencia del adoptando. La sección (1) de este mismo Artículo dispone que la adopción se efectuará mediante autorización judicial. Por su parte, el Artículo 11 de la referida Ley, 32 L.P.R.A. sec. 2699(j) dispone que el tribunal emitirá el decreto autorizando la adopción en todo caso en que concluya que la adopción solicitada conviene al bienestar del adoptando y a sus mejores intereses.

En síntesis, las disposiciones sustantivas, disponen los requisitos para ser adoptante, la imposibilidad para serlo, quiénes pueden ser adoptados y las personas

La adopción es una institución creada y estrictamente regulada por el Estado. Por tal razón, el Estado, en consecución de los fines para los cuales la creó puede legítimamente imponer condiciones y restricciones en cuanto a los requisitos de la adopción sin que estas constituyan una limitación irrazonable o injustificada en la facultad de un individuo de tomar decisiones que afecten su vida privada o familiar, y sin que estas restricciones afecten un derecho fundamental. Teniendo el Estado la facultad de autorizar o no una adopción, y el interés apremiante en garantizar el bienestar del menor, es a éste a quien le corresponde establecer todas las medidas que garanticen su protección. Conforme a ello, resolvemos que la adopción no es un derecho fundamental protegido por el derecho a la intimidad.

Siendo ello así, esto es, no enfrentándonos a una situación en que el Estado interviene, de manera irrazonable, en ciertos ámbitos de la vida privada que se encuentren protegidos o que constituyan derechos fundamentales, resolvemos que el criterio que debe utilizarse en el presente caso, en el cual no se afecta un derecho fundamental, es el de analizar la legislación en controversia bajo el escrutinio tradicional de nexo racional.

---

llamadas a consentir en la adopción. Zapata Saavedra v. Zapata Martínez, ante.

Según señaláramos anteriormente, en cuanto a las leyes que establecen clasificaciones <u>relativas a cuestiones sociales o económicas</u>, el escrutinio que deberá utilizarse por los tribunales al examinarlas lo es el de nexo racional o tradicional mínimo. Para aplicar el escrutinio estricto al presente caso, bajo el análisis de la igual protección de las leyes, tendríamos que determinar que la clasificación entre casados y no casados, para efectos de decretar quiénes no pueden ser adoptados, es una arbitraria o caprichosa. De resultar que la clasificación no es arbitraria ni caprichosa, el escrutinio que deberá utilizarse será el tradicional mínimo o de nexo racional.

Anteriormente expresamos que son arbitrarias o caprichosas aquellas clasificaciones hechas por el Estado que establecen distinciones irrazonables con respecto a personas igualmente situadas o que constituyan un trato desigual injustificado.

Todas las clasificaciones tangentes con la dignidad del ser humano y con el principio de la igualdad ante la ley están sujetas a un meticuloso examen judicial. Se encuentran en esta categoría las clasificaciones o discrímenes por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas y nacionalidad. Estas clasificaciones se consideran

inherentemente sospechosas.[9] Existe un discrimen arbitrario o irracional cuando la diferencia que la clasificación establece entre las personas o grupos es totalmente irrelevante al propósito que se pretende alcanzar con ella. San Miguel Lorenzana v. E.L.A., ante.

En el presente caso, los peticionarios alegan que la prohibición de adoptar a personas casadas constituye una clasificación sospechosa por razón de condición social. No les asiste la razón.

En el caso de Pérez Vega v. Procurador Especial de Relaciones de Familia, ante, tuvimos la oportunidad de expresarnos acerca de la expresión "origen o condición social". Expresamos allí que esta expresión se refiere a discrímenes económicos y sociales y no a distinciones razonables que puedan surgir por el estado civil de las personas. En éste, resolvimos que el Artículo 131 del Código Civil, 31 L.P.R.A. sec. 532, que sólo permite la adopción conjunta cuando los adoptantes estén casados entre sí, no violaba la igual protección de las leyes ni infringía sustancialmente en el derecho fundamental a contraer matrimonio. Según resolvimos en ese caso, una clasificación hecha por razón de status civil no es una clasificación sospechosa que viole la igual protección de las leyes.

---

[9]   Rodríguez Rodríguez v. E.L.A., ante, a la pág. 577.; San Miguel Lorenzana v. E.L.A., ante; Pérez Vega v. Proc. Gen. Rel. Fam., ante.

El Estado puede, dentro de los marcos constitucionales --y con el propósito de descargar adecuada y eficientemente sus funciones-- establecer distinciones razonables entre las personas. La garantía de la igual protección de las leyes lo que prohíbe, repetimos, es el trato desigual injustificado. Una clasificación constituye una distinción razonable si el Estado tiene un interés legítimo en realizarla. Para esto, se debe examinar el propósito de la clasificación.

Retornando al análisis de la Ley de Adopción, vemos que el propósito principal del legislador en adoptar una de las legislaciones "más avanzadas y liberales en materia de adopción" fue precisamente el proporcionar hogares a <u>menores de edad</u> necesitados de los mismos y facilitar y flexibilizar el procedimiento de adopción en beneficio de los mismos. <u>La Ley de Adopción es una legislación pensada para y en beneficio de los menores</u>. Queda claro que el legislador, al aprobarla, <u>no</u> pretendió que su propósito principal fuera facilitar la adopción para el beneficio de mayores de edad o de personas casadas ya que entendió que éstas personas en particular no necesitan la protección, las guías y el amor paternal en la misma medida en que la necesitan los menores de edad.

Por tal razón, la regla general es que la adopción de mayores de edad no está permitida y se reconoce sólo como excepción en la instancia ya mencionada. Por otro lado, la prohibición de adoptar a personas casadas o que hubieran

estado casadas es absoluta, entendiendo el legislador que la legislación que facilita la adopción en beneficio de los menores de edad no debe cobijarlos.

La exclusión de personas casadas o que hubieren estado casadas como posibles adoptandos tiene un fin legítimo. La referida Ley es ilustrativa de que el Estado no tiene un interés apremiante en proteger a los mayores de edad o personas casadas o que hubieran estado casadas, ya que entiende que estas personas ya han formado y establecido sus propios hogares o que no se encuentran en la situación de vulnerabilidad en que sí se encuentra un menor de edad.

El propósito de esta exclusión es precisamente mantener la Ley de Adopción como mecanismo de auxilio, ayuda y protección a los menores de edad. Por consiguiente, la clasificación hecha por el Estado está relacionada con el propósito que se pretende alcanzar y existe un interés legítimo en realizarla. En este sentido deberá estar sujeta a un escrutinio tradicional mínimo o de nexo racional.

Establecido que bajo la igual protección de las leyes la clasificación no es sospechosa, y que bajo el derecho a la intimidad la prohibición de adoptar personas casadas no constituye una violación a un derecho fundamental, resolvemos que la razonabilidad del Artículo 132 de la Ley de Adopción debe analizarse bajo el escrutinio tradicional o de nexo racional.

Conforme lo antes expresado, en el presente caso el escrutinio a utilizarse para el análisis del Artículo 132 de la Ley de Adopción es el tradicional mínimo o de nexo racional. Habiendo establecido que la referida disposición estatutaria tiene un fin legítimo, inevitablemente resolvemos que la misma es constitucional.

IV

Por los fundamentos antes expuestos procede confirmar la sentencia emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Teodoro López Rivera por sí
y junto a Norma I. Pagán
Núñez, et als.

    Demandantes-peticionarios

                                 CC-2003-436     CERTIORARI

        vs.

Estado Libre Asociado de Puerto
Rico

    Demandado-recurrido


SENTENCIA


En San Juan, Puerto Rico a 11 de julio de 2005


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Apelaciones en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita.


                          Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo