Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| MICHAEL E. HALOW | | Revisión Judicial procedente del Departamento de Desarrollo Económico y Comercio de Puerto Rico |
|---|---|---|
| Recurrente | | |
| v. | TA2025RA00261 | |
| DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO DE PUERTO RICO | | Caso Núm.: 2022-Act60/2021.01-008456 |
| Recurrida | | Sobre: Recurso de Revisión Administrativa Denegatoria de Decreto Contributivo Ley 60-2019 |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 1 de diciembre de 2025.

Comparece ante nos el señor Michael E. Halow ("señor Halow" o "Recurrente") mediante *Recurso de Revisión Administrativa* presentado el 25 de septiembre de 2025. Nos solicita la revisión de una *Carta Denegatoria* emitida el 3 de julio de 2025, notificada el día 10 del mismo mes y año, por el Departamento de Desarrollo Económico y Comercio de Puerto Rico ("DDEC" o "agencia recurrida"). Por virtud del aludido dictamen, la agencia recurrida denegó la aplicación núm. 2022-Act60/2021.01-008456 instada por el Recurrente, a través de la cual solicitó los beneficios contributivos establecidos por la Ley Núm. 60 del 1 de julio de 2019, según enmendada, conocida como *Código de Incentivos de Puerto Rico,* 13 LPRA sec. 45001 *et seq.,* ("Ley Núm. 60-2019").

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

## I.

El 28 de diciembre de 2022, el señor Halow presentó una solicitud electrónica ante el DDEC, a la cual se le asignó el número 2022-Act60/2021.01-008456, con el propósito de acogerse a los beneficios contributivos que ofrece la Ley Núm. 60-2019, *supra*.[1] Junto a su solicitud, el Recurrente incluyó una serie de documentos exigidos por el DDEC, entre ellos: (1) copia de pasaporte o visa de residencia; (2) copia del número de seguro social; (3) su resume o *curriculum vitae* y (4) el expediente criminal[2]. Asimismo, acompañó un documento explicativo en el que expuso las razones de los antecedentes que aparecían en su récord.[3]

Tras varias incidencias procesales, el 5 de marzo de 2025, el DDEC cursó una comunicación al Recurrente.[4] En esta, explicó que como parte de la solicitud presentada, la Oficina de Incentivos para Negocios del DDEC ("Oficina de Incentivos") realizó un *background check* y encontró los siguientes hallazgos:

- o On December 2008, the individual named Michael Esau Hallow II was detained for driving under the influence of alcohol (DUI), a misdemeanor in San Diego, California, and was also charged with giving false information to peace officer.

- o Additionally, on July 2010, the individual named Michael Esau Halow II, was detained in San Diego, California, for driving under the influence of a controlled substance and was arrested by California Police Department Officers.

- o On December 2010, the individual named Michael Esau Halow II, was detained for driving under the influence of alcohol and controlled substances and was convicted, fined and sentenced to 3 years of probation for reckless driving.

- o Furthermore, in May 2009 was charged with Domestic Battery under California penal Code Section 243(e)(1) PC-BAT and was arrested by CAHP San Diego.

- o In February 2011, the individual named Michael Esau Halow II, was charged with Domestic Battery under California penal Code Section 234(e)(1) PC-BAT, and False Imprisonment with violence, etc., under California Penal Code Section 236, and was arrested by CAPD San Diego.

---

[1] Véase, Entrada 1 del Sistema Unificado para el Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), *Recurso de Revisión Administrativa*, Anejo 1.
[2] *Íd.*, Anejos 6-10.
[3] *Íd.*, Anejo 11.
[4] *Íd.*, Anejo 16.

o   Other findings:

  o   August 2016 – Charged under California penal Code Section 166(A)(4) – PC- Contempt of Court; Charged under California Penal Code Section 602 – Trespassing; Charged under California Penal Code Section 466 – Possession of Burglary Tools.

  o   February 2018 – Charged under California Penal Code Section – Petty Theft.

  o   January 2019 – Charged under California Penal Code Section – Manufacture/sale of large-capacity magazines; Charged under California Penal Code Section 25850(A) and Section 25850(c)(6)– Carry Loaded Gun and not being the registered owner.

  o   October 2019 – Charged and convicted under California penal Code Section 25400(A)(1) – Carrying Concealed Weapon within a vehicle.

Ante ese cuadro, el DDEC concedió un término de veinte (20) días calendarios al señor Halow para que sometiera una declaración jurada respecto a los hallazgos en cuestión, así como cualquier otro documento relevante que contribuyera a su clarificación.

En respuesta, el 11 de marzo de 2024, el Recurrente volvió a someter el escrito explicativo que acompañó con su solicitud.[5] Posteriormente, el 25 de marzo de 2024, radicó otros documentos adicionales, y una declaración jurada.[6] En esta última, ofreció explicaciones detalladas sobre los hallazgos encontrados por la agencia recurrida. En específico, el señor Halow indicó lo siguiente:

[...]

5.  That the OI report showed that on December 2008, "I was detained for driving under the influence of alcohol (DUI), a misdemeanor in San Diego, California, and was also charged with giving false information to peace officer." In this incident, I was arrested for DUI, I informed the officer I was not drunk, I was arrested and when I got to the police station, I blew a .06, which is under the legal limit of San Diego, California. As a consequence, these charges were all dismissed. I could not find paperwork for this incident because it was only an arrest, and I was never formally charged.

6.  Additionally, the OI report showed that on July 2010, "I was detained in San Diego, California, for driving under the influence of a controlled substance and was arrested by California Police Department Officers." This DUI charge was dropped to a reckless driving charge. I was sentenced to a class, a fine, and probation. Everything was paid and completed as shown in the paperwork attached.

---

[5] *Íd.*, Anejo 17.
[6] *Íd.*, Anejos 18-22.

7. The OI report showed that on December 2010, "I was detained for driving under the influence of alcohol and controlled substances and was convicted, fined and sentenced to 3 years of probation for reckless driving." This charge is the same as above. They're just setting the dates confused probably with the sentencing versus the actual arrest. This paperwork is attached.

8. Furthermore, the OI report showed that on May 2009, "I was charged with Domestic Battery under California penal Code Section 243(e)(1) PC-BAT and was arrested by CAHP San Diego." What happened is that I had an argument with my girlfriend at the time. I was arrested for domestic battery. All the charges were dismissed. I never went to court. I could not find paperwork for this incident because it was only an arrest, and I was never formally charged.

9. That the OI report showed that on February 2011, "I was charged with Domestic Battery under California penal Code Section 243(e)(1) PC-BAT, and False Imprisonment with violence, etc., under California Penal Code Section 236, and was arrested by CAPD San Diego." This charge was also an argument with the same girlfriend I had in May 2009. She claimed I stood in front of the bedroom door and refused to let her out of the room. I was arrested for domestic violence and false imprisonment. These charges were dismissed, and the charge never went to court. I could not find paperwork for this incident because it was only an arrest, and I was never formally charged.

10. The OI report showed that on August 2016, "I was charged under California penal Code Section 166(A)(4) - PC- Contempt of Court; Charged under California Penal Code Section 602 - Trespassing; Charged under California Penal Code Section 466 - Possession of Burglary Tools." For this charge, I had gone to a court date for a friend of mine. I was waiting outside of the courthouse. I had a lock pick set in my pocket, and I was playing with my own practice pad lock. I was arrested for possession of burglary tools, and trespassing. These charges were dismissed, and the charge never went to court. I could not find paperwork for this incident because it was only an arrest, and I was never formally charged.

11. That the OI report showed that on February 2018, "I was charged under California Penal Code Section 488 for Petty Theft." For this charge, I invertedly did not scanned a pack of batteries while at Home Depot. I was arrested for petty theft for a small pack of batteries. I pled guilty, paid a fine and was sentenced to probation which I subsequently completed as shown in the paperwork attached.

12. In addition, the OI report showed that on January 2019, "I was charged under California Penal Code Section for Manufacture/sale of large-capacity magazines and charged under California Penal Code Section 25850(A) and Section 25850(c)(6) for Carry Loaded Gun and not being the registered owner." For this charge, I was arrested outside of my house where I lived. I was investigating some suspicious people in the middle of the night trying to break into cars. I had gotten in my car to go retrieve their license plate number, when I arrived a few houses down from my house the police officer had already had that person detained for suspicious activity. He thought I was involved with them, so he pulled me

over. He found my fiancée's 3 guns in the car which she had a concealed carry permit for. Because she was inside the home, and not in the car with me, I was arrested for unlawful possession of a firearm. One of the magazines in the firearm was over 10 rounds so I was also charged with possession of a large capacity magazine because of the California 10 round magazine law. That charge was dismissed. They reduced the possession of a firearm case to a misdemeanor. I plead guilty, completed 1 year probation and the charge was subsequently expunged off my record, as shown on the paperwork attached.

13. The OI report showed that on October 2019 "I was charged and convicted under California penal Code Section 25400(A)(1) for Carrying Concealed Weapon within a vehicle." This is the same case as above. This charge is the same as above and the paperwork is attached.

14. That as part of application I answered "yes" to the following background question: Has the Applicant been convicted for a felony or misdemeanor? My answer was based on the incident from January 2019 where I pleaded guilty for a misdemeanor.

Añadió, que desde el año 2019 no había tenido ningún incidente y que estaba en la mejor disposición de cooperar y proveer cualquier información o documento solicitado por la Oficina de Incentivos.

Así las cosas, el 3 de julio de 2025, notificada mediante correo electrónico el día 10 del mismo mes y año, el DDEC emitió una *Carta Denegatoria* en la que rechazó la solicitud del señor Halow.[7] Como fundamento, la agencia recurrida expuso las siguientes razones:

1. Criminal History Disqualification:
   o Your criminal record includes multiple felony and misdemeanor convictions, such as:
     ▪ Aggravated Assault Causing Serious Bodily Injury (Texas, 2004).
     ▪ Domestic Violence (California, PC 243(e)(1), 2009 & 2011).
     ▪ Firearms Violations (California, PC 32310, 2019).
     ▪ DUI and Drug-Related Offenses (Multiple instances in California and Texas).
   o Pending or unresolved charges were also noted in your record.

2. Failure to Meet Good Moral Character Requirement:
   o The Act requires applicants to demonstrate good moral character. Your extensive criminal history, including violent offenses and firearms violations, raises significant concerns about your eligibility under this standard.

---

[7] Véase, Entrada 2, SUMAC-TA.

3. Risk to Public Safety and Program Integrity:
- o Approval of incentives for an individual with your criminal background could pose risks to public safety and undermine the integrity of Puerto Rico's incentive programs.

Asimismo, concluyó que la denegatoria estaba fundamentada en la sección 6020.05(b) de la Ley Núm. 60-2019, 13 LPRA sec. 48525.

En desacuerdo con el resultado, el 30 de julio de 2025, el señor Halow presentó escrito intitulado *Sworn Statement Petition to Reconsider the Denial of Tax Exemption Application.*[8] Sobre lo relacionado a su historial criminal, el Recurrente explicó que los delitos mencionados en la *Carta Denegatoria* no conllevaron una convicción que permaneciera en su expediente. Detalló que la mayoría de dichos asuntos se limitaron a arrestos sobre los que nunca se presentaron cargos formales, o casos que fueron rápidamente desestimados. Añadió que, a su mejor entendimiento, no había ningún caso pendiente en su expediente criminal.

Por otro lado, con respecto al requisito de buena conducta moral, arguyó que había sido completamente transparente a través de su proceso de aplicación, incluso proveyendo toda la información y documentación solicitada. De otra parte, reconoció que su conducta pasada podía generar inquietudes. No obstante, aseguró haber dado pasos importantes dirigidos a su crecimiento personal y rehabilitación. Así, sostuvo que creía firmemente tener un impacto positivo en la Isla, y estaba plenamente comprometido a continuar sus esfuerzos para contribuir al bienestar social y económico de Puerto Rico.

Finalmente, en cuanto al asunto de constituir un riesgo para el bienestar público, indicó que la mera existencia de una convicción anterior no implicaba automáticamente que carecía de buena moral,

---

[8] Véase, Entrada 1, SUMAC-TA, Anejo 27.

"particularly when accompanied by evidence of rehabilitation and lawful conduct since the event."[9] Añadió que la determinación de buena moral debía considerar la totalidad de las circunstancias, incluyendo la ausencia de problemas legales recientes, así como el haber demostrado el compromiso de vivir responsablemente y siguiendo la ley. De igual forma, insistió en que no había sido condenado por los delitos que aparecían en su expediente criminal, por lo que no debía ser objeto de medidas adversas basadas en acusaciones no probadas o desestimadas. Por último, señaló que denegar su solicitud a base de antecedentes pasados era injusto y potencialmente discriminatorio.

El 30 de julio de 2025, la agencia recurrida hizo acuse de recibo de la solicitud de reconsideración.[10] Sin embargo, esta no fue atendida dentro del plazo correspondiente, por lo que se entiende que la misma fue rechazada de plano.

Inconforme aún, el 25 de septiembre de 2025, el señor Halow recurrió ante esta Curia mediante el recurso de epígrafe. En su escrito sostiene que el DDEC incurrió en los siguientes señalamientos de error:

> Erró el Departamento de Desarrollo Económico y Comercio en emitir una Carta de Denegación de un Decreto Contributivo en violación al principio de igual protección de las leyes.
>
> Erró el Departamento de Desarrollo Económico y Comercio en exceder los límites de su discreción administrativa.
>
> Erró el Departamento de Desarrollo Económico y Comercio en utilizar la Sección 6020.05(b) para no conceder un decreto contributivo bajo la Ley 60-2019 para individuos inversionistas ya que el peticionario no es convicto de delitos que impliquen depravación moral o que la concesión de exención resultará en perjuicio para los intereses económicos y sociales de Puerto Rico.

El 30 de septiembre de 2025, emitimos *Resolución* en la que, entre otros asuntos, concedimos hasta el 27 de octubre de 2025,

---

[9] *Íd.*, pág. 103.
[10] Véase, Entrada 1, SUMAC-TA, Anejo 35.

para que la agencia recurrida presentara su alegato en oposición. Oportunamente, el 27 de octubre de 2025, DDEC instó *Oposición a Recurso de Revisión Administrativa.*

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nos.

### A. *Estándar de Revisión Judicial de Determinaciones Administrativa*

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado". *Katiria's Café v. Mun. de San Juan*, 215 DPR ___ (2025), 2025 TSPR 33, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta de Subastas ACT et al.*, 214 DPR 633, 648 (2024). Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024).

A esos efectos, la Sección 3.14 de la Ley Núm. 201-2003, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9654, preceptúa los componentes distintivos de un dictamen final. En específico, esa disposición establece que una resolución u orden final debe incluir: (1) determinaciones de hechos, (2) conclusiones de derecho y (3) una advertencia sobre el derecho a solicitar reconsideración o revisión judicial. *Katiria's Café v. Mun. de San Juan*, supra, pág. 3.

Ahora bien, en cuanto las determinaciones de derecho, nuestra más Alta Curia en *Vázquez et al v. DACo*, 215 DPR ___ (2025), 2025 TSPR 56, incorporó la doctrina discutida en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en cuanto a que los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. En aquella ocasión, nuestro Máximo Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales" por lo cual enfatizó que, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Vázquez et al v. DACo,* supra*,* pág. 32.

### B. *Código de Incentivos*

El 1 de julio de 2019, la Asamblea Legislativa promulgó el Código de Incentivos de Puerto Rico, *supra*, con el propósito de promover actividades que fomentaran el crecimiento económico de Puerto Rico mediante la inversión, exportación y la creación de empleos. Véase, Exposición de Motivos, Ley Núm. 60-2019. En concordancia con ello, la legislación consolida una multitud de decretos, subsidios, incentivos, reembolsos y beneficios contributivos o financieros en un solo cuerpo. *Íd.*

En lo pertinente al asunto ante nuestra consideración, la Ley Núm. 60-2019, *supra*, dispone que un decreto constituye "la concesión, mediante contrato, que emita el Secretario del DDEC permitiendo a un Negocio Elegible, gozar de incentivos y/o créditos contributivos correspondientes a dicho Negocio Elegible, sujeto a que cumplan con los requisitos y la reglamentación aplicable, ya sea bajo este Código o Leyes de Incentivos Anteriores." 13 LPRA sec. 45012 (a)(20).

De otra parte, el referido estatuto define individuo residente inversionista de la siguiente manera:

> [U]n individuo elegible para obtener los beneficios de las Secciones 2022.01 y 2022.02 de este Código y que es un Individuo Residente de Puerto Rico, que no haya sido un Individuo Residente de Puerto Rico entre el 17 de enero de 2006 y el 17 de enero de 2012, y que se convierta en un Individuo Residente de Puerto Rico no más tarde del Año Contributivo que finaliza el 31 de diciembre de 2035. Los estudiantes que cursen estudios fuera de Puerto Rico que residían en Puerto Rico antes de marcharse a estudiar, el personal que trabaje fuera de Puerto Rico temporalmente para el Gobierno de Puerto Rico, sus agencias e instrumentalidades, y personas en situaciones similares a las antes descritas, no cualificarán para considerarse como Individuos Residentes Inversionistas, ya que su domicilio en estos casos continúa siendo Puerto Rico por el período en que residan fuera de nuestra jurisdicción. 13 LPRA sec. 45013 (a)(4).

A tenor de lo anterior, la Ley Núm. 60-2019, *supra*, permite que un individuo residente inversionista solicite al Secretario del DDEC los beneficios contributivos que provee en su capítulo B, sujeto a las limitaciones que dispone la legislación. 13 LPRA sec. 45131.

Ahora bien, la concesión de un decreto contributivo está sujeta a la discreción del Secretario del DDEC y al endoso del Departamento de Hacienda. 13 LPRA sec. 48521(i)(2). En esa misma dirección, la Sección 6020.05, *supra*, dispone lo siguiente en cuanto a la denegación de solicitudes:

> (a) ...
>    [...]
> (b) *Denegación por Conflicto con el Interés Público*
>    (1) **El Secretario del DDEC podrá denegar cualquier solicitud cuando determinare**, a base de los hechos presentados a su consideración, **que la solicitud está en conflicto con el interés público de Puerto Rico**, que el negocio solicitante no ha sido organizado como negocio bona fide con carácter permanente, **o en vista de la reputación moral o financiera de las personas que lo constituyen**, los planes y métodos para obtener financiamiento, **o cualquier otro factor que pueda indicar que existe una posibilidad razonable de que la concesión de exención resultará en perjuicio de los intereses económicos y sociales de Puerto Rico**.
>    (2) El peticionario, luego de ser notificado electrónicamente de la denegación, podrá solicitar al Secretario del DDEC, una reconsideración de

conformidad con las disposiciones de la Sección 6020.01(h) de este Código. (Énfasis nuestro).

En todo caso que se deniegue una solicitud, el Secretario del DDEC vendrá obligado a emitir una notificación electrónica al solicitante, que incluya una breve explicación sobre las razones de la denegatoria, así como las advertencias pertinentes sobre el derecho de reconsideración. 13 LPRA sec. 48521(i)(6).

### C. *Reglamento de Incentivos*

Al amparo de la Ley Núm. 60-2019, *supra*, el DDEC promulgó el *Reglamento de Incentivos*, Reglamento Núm. 9248 de 21 de diciembre de 2020. Este, tiene el propósito de implementar las normas y reglas que rigen, entre otras cuestiones, el proceso de solicitudes de decretos de exención o beneficios contributivos, así como cualquier otra gestión relacionada a este. Artículo 1000.01-4 del *Reglamento de Incentivos*.

En lo que concierne, el referido reglamento establece los requisitos relacionados a la solicitud de decreto. Así, dispone que todas las solicitudes de decreto bajo el Capítulo 2 del Subtítulo B de la Ley Núm. 60-2019, *supra*, deberán incluir, entre otros, el certificado de antecedentes penales del solicitante. Artículo 6020.01(b)(2)-2 del *Reglamento de Incentivos*.

### D. *Igual protección de las leyes*

La Carta de Derechos de la Constitución de Puerto Rico establece que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se le negará la igual protección de las leyes. Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Este principio constitucional "no exige que siempre se dé un trato igual a todos los ciudadanos sino que prohíbe un trato desigual e injustificado". *Comisionado Electoral v. Pres. CEE et al.*, 215 DPR ___ (2025), 2025 TSPR 54, pág. 23, citando a *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 15-16 (2010). En ese sentido, el derecho

constitucional a la igual protección de las leyes no prohíbe que el Estado establezca clasificaciones dirigidas a descargar sus funciones de manera adecuada y eficiente. *P.A.C. v. E.L.A. I,* 150 DPR 359, 378 (2000).

Cuando se cuestione una clasificación al amparo del derecho de igual protección de las leyes, los tribunales deben utilizar uno de los (2) tipos de escrutinios establecidos jurisprudencialmente: el escrutinio estricto o el escrutinio tradicional o de nexo racional. *Comisionado Electoral v. Pres. CEE et al.,* 215 DPR \_\_ (2025), supra. El escrutinio estricto se utiliza cuando la clasificación realizada afecta un derecho fundamental o, cuando se establece una clasificación sospechosa que no guarda relación con la habilidad a la aptitud de las personas afectadas por esta. *López v. E.L.A.,* 165 DPR 280, 299 (2005). En estos casos, la legislación se presume inconstitucional y el Estado debe probar la existencia de un interés apremiante o de superior jerarquía que lo justifique. *Íd.*

Por otra parte, el escrutinio tradicional mínimo se utiliza cuando la legislación no crea una clasificación sospechosa ni afecta derechos fundamentales. *Berberena v. Echegoyen,* 128 DPR 864, 874 (1991). Así pues, la clasificación no se declarará inválida, salvo que sea claramente arbitraria. *Comisionado Electoral v. Pres. CEE et al.,* supra, pág. 24. Para determinar que una clasificación es arbitraria, quien impugna la misma debe demostrar que no existe un interés estatal legítimo, o que no puede establecerse un nexo racional entre la clasificación y dicho interés del Estado. *Íd.*

**III.**

En el presente recurso, el señor Halow nos solicita que revoquemos la *Carta Denegatoria* emitida por el Secretario del DDEC mediante la cual denegó su solicitud de beneficio contributivo. A través del primer señalamiento de error, el Recurrente alega que el DDEC violentó el principio de igual protección de las leyes al emitir

la determinación recurrida. Sostiene que el Secretario del DDEC no puede denegar un beneficio discrecionalmente, sin proveer una justificación clara, objetiva y pertinente que demuestre el fundamento legal y reglamentario de su determinación. Además, argumenta que el Secretario del DDEC ha aprobado decretos contributivos a otros inversionistas con convicciones similares a las que aparecen en su expediente criminal.

De entrada, es menester destacar que el señor Halow solicitó un beneficio contributivo y no un derecho constitucional garantizado. En ese sentido, la Ley Núm. 60-2019, *supra*, le confiere al Secretario del DDEC discreción para conceder o denegar decretos contributivos, sujetos a criterios legales y reglamentarios. 13 LPRA sec. 48521(i)(2). Por tanto, la solicitud del Recurrente dependía plenamente de la discreción del Secretario del DDEC. Establecido lo anterior, atendemos el primer señalamiento de error en los méritos.

Tras un estudio detenido de la determinación emitida por el Secretario del DDEC, constatamos que esta sí provee una justificación clara de por qué la solicitud fue denegada, así como el fundamento legal y reglamentario que sustenta dicho rechazo. En específico, la *Carta Denegatoria* dispone expresamente que la solicitud instada por el señor Halow fue rechazada por: (1) los antecedentes penales que surgen de su expediente criminal, los cuales incluyen una serie de convicciones por delitos graves y menos graves[11], incluyendo algunos que no muestran una disposición final[12]; (2) la falta de buena conducta moral y, (3) por la posibilidad de constituir un riesgo para la seguridad pública y la integridad del programa. El Secretario del DDEC, además, vinculó cada uno de estos fundamentos con evidencia concreta que surge del historial criminal del Recurrente. Asimismo, dispuso expresamente que la

---

[11] Véase, Entrada 1, SUMAC-TA, Anejos 6-10.
[12] *Íd.*, Anejo 6, pág. 14.

denegatoria estaba fundamentada en la Sección 6020.05(b) de la Ley Núm. 60-2019, *supra,* e incluyó la advertencia correspondiente sobre el derecho a solicitar reconsideración o revisión judicial. Ante este cuadro, es forzoso concluir que la *Carta Denegatoria* no solo está debidamente justificada, sino que también cumple con las exigencias del ordenamiento jurídico. Véase, 3 LPRA sec. 9654.

De otra parte, advertimos que el Recurrente no presentó evidencia que sustente su planteamiento sobre un alegado trato desigual. Del expediente ante nuestra consideración no surge documento alguno que demuestre que el Secretario del DDEC ha concedido decretos contributivos a inversionistas con antecedentes penales similares a los suyos. Así pues, dicho argumento carece de méritos.

Por último, conviene precisar que, contrario a lo que argumenta el señor Halow, la carta denegatoria no está amparada en "supuestos actos ocurridos en el pasado"[13], sino en los antecedentes que surgen directamente de su expediente criminal.

Por todo lo anterior, concluimos que el primer señalamiento de error no fue cometido.

En su segundo señalamiento de error, el Recurrente sostiene que el Secretario del DDEC se excedió en su discreción administrativa al denegar el beneficio solicitado. Alega que la *Carta Denegatoria* "se limita a afirmar vaga y genéricamente que la concesión sería contraria al interés público"[14], y no explica cómo el "supuesto historial criminal"[15] afecta adversamente los intereses económicos o sociales de Puerto Rico. Además, esgrime que, "aun cuando el historial [criminal] resultara pertinente"[16], el Secretario

---

[13] Véase, Entrada 1, SUMAC-TA, pág. 18
[14] *Íd.*, pág. 20.
[15] *Íd.*
[16] *Íd.*

del DDEC tenía el deber de evaluar su alegado proceso de rehabilitación y su comportamiento actual. No le asiste la razón.

En principio, conviene reiterar que la solicitud presentada por el señor Halow corresponde a un beneficio contributivo de carácter discrecional, y la Ley Núm. 60-2019, *supra*, le confiere discreción al Secretario del DDEC para determinar si la concesión del decreto es compatible con el interés público y con el propósito del programa de incentivos. 13 LPRA sec. 48525. Tal y como señalamos, surge claramente de la *Carta Denegatoria* que el Secretario del DDEC detalló las razones para denegar la solicitud y explicó cómo el historial criminal del señor Halow afectó su elegibilidad. A base de dicho historial, el Secretario del DDEC concluyó que la aprobación del beneficio contributivo a favor del Recurrente podría representar un perjuicio para los intereses económicos y sociales de Puerto Rico. Adviértase además, que la Ley Núm. 60-2019, *supra*, no exige una resolución exhaustiva por parte del Secretario del DDEC, sino que es suficiente con que la notificación que deniega la solicitud incluya una breve explicación sobre las razones de la determinación. 13 LPRA sec. 48521(i)(6). El ordenamiento jurídico tampoco exige que la agencia recurrida evalúe factores atenuantes, según sugiere el Recurrente.

Sobre el particular, conviene además señalar que, en su argumentación, el Recurrente se refiere a su historial criminal como un "supuesto"[17], y precisa que este no es pertinente en el proceso de solicitud del beneficio contributivo en controversia.[18] Según hemos advertido, el expediente ante nuestra consideración evidencia que el señor Halow tiene múltiples antecedentes penales por delitos graves y menos graves[19], por lo que es incorrecto afirmar que su historial

---

[17] *Íd.*
[18] *Íd.*
[19] Véase, Entrada 1, SUMAC-TA, Anejos 6-10.

criminal constituye un "supuesto". De otra parte, es necesario recordar que el *Reglamento de Incentivos* exige la presentación de un certificado de antecedentes penales como parte de la solicitud, de modo que resulta desacertado plantear que el historial criminal no es relevante para el proceso de solicitud. Artículo 6020.01(b)(2)-2 del *Reglamento de Incentivos*.

A la luz de lo esbozado, razonamos que el Secretario del DDEC no se excedió en su discreción al denegar la solicitud presentada por el señor Halow. Consecuentemente, el segundo señalamiento de error tampoco fue cometido.

Finalmente, en su tercer señalamiento de error, el Recurrente arguye que el DDEC incidió al no conceder el beneficio contributivo al amparo de la Sección 6020.05(6) de la Ley Núm. 60-2019, *supra*, puesto que no ha sido convicto por delitos que impliquen depravación moral, ni existe evidencia de que la concesión del beneficio resulte en perjuicio para los intereses económicos y sociales de Puerto Rico. No nos persuade tal argumento.

Indiscutiblemente, la discreción del Secretario del DDEC para evaluar y tomar una determinación sobre una solicitud de decreto contributivo no está limitada a delitos de depravación moral, como alega el Recurrente. Además, nada en el ordenamiento jurídico dispone que el Secretario del DDEC solo puede considerar el expediente criminal de un inversionista residente cuando este incluya delitos de dicha naturaleza.

En esa línea, el Recurrente propone que, como no existe una convicción por depravación moral en su historial, "existe prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada (acusaciones desestimadas)"[20]. No le asiste la razón. Reiteramos que el expediente criminal del señor Halow

---

[20] Véase, Entrada 1, SUMAC-TA, pág. 24.

incluye múltiples convicciones por delitos graves y menos graves, y no surge del expediente prueba adicional que menoscabe dicha realidad. El hecho que el Recurrente haya ofrecido explicaciones sobre sus antecedentes no implica que estos no debieron ser considerados por el Secretario del DDEC al momento de evaluar la solicitud. Cual discutido, la determinación del Secretario del DDEC sobre estos asuntos es discrecional.

Así pues, resulta razonable que el Secretario del DDEC denegará la solicitud del beneficio contributivo instada por el Recurrente. La *Carta Denegatoria* está sustentada en la evidencia que surge del expediente y se apoya en la discreción del Secretario del DDEC. Consecuentemente, concluimos que el tercer señalamiento de error tampoco fue cometido.

En conformidad con todo lo anterior, y luego de un examen cuidadoso del expediente ante nuestra consideración, coincidimos con el criterio de la agencia recurrida. Ante la ausencia de prueba que demostrara que el DDEC actuara de forma arbitraria, irrazonable o ilegal, colegimos que la agencia recurrida aplicó correctamente el derecho al denegar el beneficio contributivo solicitado por el señor Halow. Por tanto, corresponde otorgarle deferencia al DDEC y, por consiguiente, confirmar la determinación impugnada.

## VI.

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones