Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| BORINQUENEERS FILM, LLC<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO<br><br>Recurrido | TA2025RA00381 | REVISIÓN JUDICIAL Procedente del Departamento de Desarrollo Económico<br><br>Caso Núm.: 2024-CIN-0000444<br><br>Sobre: Denegatoria de Decreto Contributivo |
|---|---|---|

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante nos Borinqueneers Film, LLC ("Borinqueneers" o "Recurrente") mediante escrito intitulado *Solicitud de Revisión Judicial* presentado el 5 de diciembre de 2025. En este, nos solicita la revisión de la *Carta Denegatoria* emitida y notificada el 10 de octubre de 2025, por el Departamento de Desarrollo Económico y Comercio de Puerto Rico ("DDEC" o "agencia recurrida"). Por virtud de la misma, la agencia recurrida negó enmendar el Decreto de Incentivos Contributivos otorgado a la Recurrente. En consecuencia, el DDEC no concedió la extensión de la fecha de comienzo para la primera fotografía del filme *The Borinqueneers* solicitada.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

### I.

Conforme se desprende de los autos, el 16 de julio de 2024, la Recurrente presentó *Solicitud de Incentivos Contributivos Fílmicos* mediante el Portal del Programa de Incentivos del DDEC, al cual se

le proveyó el número de caso 2024-CIN-000044.[1] Posteriormente, el 6 de noviembre de 2024, el DDEC emitió documento intitulado *Decree* ("*Decreto*") al amparo de los términos dispuestos en el Capítulo 9 del Subtítulo B, y el Capítulo 5 del Subtítulo C del *Código de Incentivos de Puerto Rico*, Ley Núm. 60 del 1 de julio de 2019, según enmendada, 13 LPRA sec. 45001 *et seq.*, ("Ley Núm. 60-2019").[2] En lo pertinente, se desprende del Decreto lo siguiente:

> BE IT FURTHER DECREED, that **the Applicant shall commence Principal Photography in Puerto Rico within one hundred and twenty (120) calendar days after the issuance of the Decree**; PROVIDED FURTHER, that requests for an extension to commence Principal Photography on behalf of the Film Project shall be presented through the filing of a sworn document requesting an amendment to the Decree with the Department of Economic Development and Commerce. **At the discretion of the Secretary of Development and if there is reasonable cause for an extension, the Secretary of Development will inform the Applicant of the extension through an amendment of the Decree. Reasonable cause includes the following:**
>
>> 1. Force majeure: Acts of God or nature; death of producer/director/main cast talent only when it is the starring role; war; strikes; riots; crime; changes in law; pandemics; impossibility.
>> 2. Cast circumstances in key roles such as changes in talent given that talent is sick, or talent cannot perform;
>> 3. Mutual assent to transfer the Decree to a new production entity or producer to produce the Film Project object of the Decree with prior consent of the DEDC Secretary;
>> 4. Mutual assent to transfer the Decree to a new project produced by the same production entity or producer with prior consent of the DEDC Secretary.
>
> **BE IT FURTHER DECREED, that failure to commence Principal Photography within the above referenced one hundred and twenty (120) calendar days will be deemed as a failure to comply with the procedures established by the Secretary of Development, a noncompliance with this Decree and will result in the revocation of this Decree** and forfeiture of the Filing Fees paid and the tax credits reserved (Énfasis nuestro).[3]

---

[1] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 6.
[2] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 19.
[3] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 19.

En lo que respecta a la controversia trabada ante nuestra consideración, el 18 de febrero de 2025, la Recurrente remitió una carta al Lcdo. José Sánchez Acosta, Director del Programa de Cine del DDEC[4], en la cual explicó que se suscitaron ciertos eventos fuera de su control que ponían en posición a Borinqueneers de solicitar una enmienda al *Decreto* otorgado. Puntualizó, que la aludida enmienda sería a los fines de obtener una nueva fecha para el comienzo de la fotografía principal del filme *The Borinqueneers*. Concretamente esbozó que, entre las razones que obligaban a solicitar la modificación de la fecha, se encontraban "los fuegos en California y la alteración de compromisos previos de ciertos actores comprometidos con la producción".[5] Por consiguiente, solicitó una extensión de fecha hasta el 6 de octubre de 2025 para iniciar la fotografía principal de *The Borinqueneers*.

Atendida la solicitud de la Recurrente, el 25 de abril de 2025, el DDEC, emitió la enmienda correspondiente al Decreto, la cual lee como sigue : "BE IT DECREED, that, **after an evaluation of the documents submitted by the Film Project, the DEDC hereby approves the requested extension to begin Principal Photography in Puerto Rico on October 6, 2025**".[6]

Previo a la fecha concedida en la enmienda para comenzar la fotografía inicial, el 23 de septiembre de 2025, la Recurrente presentó una nueva misiva, en esta ocasión, dirigida al Secretario del DDEC.[7] En esta, explicó que la inclusión de un nuevo socio financiero al proyecto trajo "consigo una serie de trámites legales, financieros, de logística y planificación que sin duda alguna dilatan el inicio de la fotografía principal".[8] Ante este escenario, solicitó

---

[4] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 9.
[5] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 9, pág. 059.
[6] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 11.
[7] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 13.
[8] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 13, pág. 066.

autorización para enmendar nuevamente el Decreto, para que la fotografía principal comenzara el 1 de junio de 2026.

Examinados los planteamientos esbozados, el 10 de octubre de 2025, el DDEC emitió *Denial of Request for Decree Amendment* ("Carta Denegatoria").[9] Mediante el aludido documento, la agencia recurrida formuló las siguientes determinaciones de hechos:

1. Pursuant to the terms of the Decree, Grantee was required to commence 'Principal Photography' within one hundred and twenty (120) days from the issuance of the Decree granted on November 6, 2024.

2. The terms and conditions stated on page seven, paragraph three of the Decree provide that the Grantee is subject to all provisions and administrative requirements of the Act and any regulations, circular letters, or administrative determinations issued by the Secretary. The Grantee is subject to compliance with all terms of the Decree, the Act, the Puerto Rico Internal Revenue Code, and the commitments established in the Decree. Failure to comply may result in administrative sanctions, including revocation of the Decree.

3. Due to conflicting calendars by the film's production team and talent as a consequence of the Los Angeles, California January 2025 wildfires, Grantee had previously requested an extension up to October 6, 2025, to commence Principal Photography. The original extension to the commencement of Principal Photography was granted by means of an amendment to the Decree, dated March 3, 2025.

4. Grantee's Request for a second extension up to June 1, 2026, for commencement of Principal Photography, is solely based on Grantee's unilateral representations that the inclusion of a new financial partner has resulted in delays with the project's financing, production, and distribution framework.

5. **Grantee's Request further affirms that commencement of Principal Photography has been delayed due to negotiations with potential actors, which have only recently initiated, to ongoing "pay or play" negotiations, and to the availability of funds through a studio (i.e., WonderHill Studio) which is not a party to the Decree. Therefore, after the initial 120 days and close to the due date for the first extension previously granted, the Film Project's commencement of Principal Photography is still uncertain and dependent on outside factors, which raises issues of maturity of the Film Project and**

---

[9] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 2.

> **feasibility of completion by the date object of the second extension requested by Grantee.**
>
> 6. Grantee's Request was made through a letter sent to the Secretary by electronic communication and not through a sworn application for amendment duly filed at the Incentives Portal pursuant to Articles 6011.03(b)-1, and 6020.01(b)-1 of the Incentives Regulation No. 9248 of 2020, as amended ("Incentives Regulation"). The Request as submitted, outside the Incentives Portal, also omitted the payment of the filing and processing fee established in Article 6020.01(b)(3)-1 of the Incentives Regulation. Therefore, the Request was not duly filed in accordance with the terms of the Decree, the Act and the Incentives Regulation (Énfasis nuestro).[10]

Cónsono con estas determinaciones de hecho, el DDEC concluyó que la Recurrente no era elegible para una segunda extensión, pues la solicitud no esbozó justa causa para ello conforme dispone el Decreto otorgado.

Inconforme, el 29 de octubre de 2025, la Recurrente presentó reconsideración de la determinación de la agencia recurrida.[11] En síntesis, aludió a que el DDEC operó bajo la doctrina de actos propios y que se le violentó le debido proceso de ley. En particular, esgrimió que "el disfrute de los beneficios del Decreto, como cualquier otro beneficio de esa naturaleza otorgado por el Gobierno de Puerto Rico, constituyen propiedad del titular, en este caso, de Borinqueneers Film, LLC".[12] Por tales circunstancias, la Recurrente solicitó al DDEC que reconsidere su determinación de no enmendar el Decreto o, en la alternativa, que señale una vista administrativa.

Transcurrido el término para atender la solicitud de reconsideración instada sin que el DDEC considerara la misma, el 5 de diciembre de 2025, la Recurrente presentó el recurso de epígrafe en el cual formuló los siguientes señalamientos de error:

> ERRÓ EL DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO AL SOSLAYAR EL DEBIDO PROCEDIMIENTO DE LEY DABLE A LA RECURRENTE.

---

[10] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 2, pág. 001-002.
[11] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 3.
[12] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 3, pág. 021.

ERRÓ EL DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO CUANDO DENEGÓ LA SEGUNDA ENMIENDA AL DECRETO DE INCENTIVOS CONTRIBUTIVOS FÍLMICO PARA COMENZAR LA FOTOGRAFÍA PRINCIPAL DEL PROYECTO THE BORINQUENEERS.

El 8 de diciembre de 2025, esta Curia emitió *Resolución* en la que se le concedió a la parte recurrida hasta el 7 de enero de 2026 para presentar su postura. Oportunamente, el 7 de enero de 2026, el DDEC presentó *Oposición a Solicitud de Revisión Judicial.* Por su parte, el 12 de enero de 2026, la Recurrente presentó *Solicitud de Breve Término Para Réplicar* [sic], la cual fue declarada *No Ha Lugar* por este foro apelativo mediante *Resolución* emitida el 13 de enero de 2026. Asimismo, el 2 de febrero de 2026, Borinqueneers instó *Moción Urgente en Auxilio de Jurisdicción,* la cual fue declarada *No Ha Lugar* por este Tribunal al día siguiente. Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

### A. *Estándar de Revisión Judicial de Determinaciones Administrativa*

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado". *Katiria's Café v. Mun. de San Juan,* 215 DPR ___ (2025), 2025 TSPR 33, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta de Subastas ACT et al.,* 214 DPR 633, 648 (2024). Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia

sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024).

A esos efectos, la Sección 3.14 de la Ley Núm. 201-2003, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9654, preceptúa los componentes distintivos de un dictamen final. En específico, esa disposición establece que una resolución u orden final debe incluir: (1) determinaciones de hechos, (2) conclusiones de derecho y (3) una advertencia sobre el derecho a solicitar reconsideración o revisión judicial. *Katiria's Café v. Mun. de San Juan,* supra, pág. 3.

Ahora bien, en cuanto las determinaciones de derecho, nuestra más Alta Curia en *Vázquez et al v. DACo,* 215 DPR ___ (2025), 2025 TSPR 56, incorporó la doctrina discutida en *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en cuanto a que los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. En aquella ocasión, nuestro Máximo Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales" por lo cual enfatizó que, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Vázquez et al v. DACo,* supra*,* pág. 32.

### B. Código de Incentivos

El 1 de julio de 2019, la Asamblea Legislativa promulgó el *Código de Incentivos de Puerto Rico,* Ley Núm. 60 del 1 de julio de 2019, según enmendada, 13 LPRA sec. 45001 *et seq.,* ("Ley Núm. 60-2019"), con el propósito de promover actividades que fomenten el crecimiento económico de Puerto Rico mediante la inversión, exportación y la creación de empleos. Véase, Exposición de Motivos, Ley Núm. 60-2019. En concordancia con ello, la legislación

consolida una multitud de decretos, subsidios, incentivos, reembolsos y beneficios contributivos o financieros en un solo cuerpo. *Íd.*

En lo pertinente al asunto ante nuestra consideración, la Ley Núm. 60-2019, *supra*, dispone que un decreto constituye "la concesión, mediante contrato, que emita el Secretario del DDEC permitiendo a un Negocio Elegible, gozar de incentivos y/o créditos contributivos correspondientes a dicho Negocio Elegible, sujeto a que cumplan con los requisitos y la reglamentación aplicable, ya sea bajo este Código o Leyes de Incentivos Anteriores." 13 LPRA sec. 45012 (a)(20).

De otra parte, el referido estatuto, en su Sección 2091.01, 13 LPRA sec. 45871, dispone lo siguiente respecto a la concesión de incentivos económicos a industrias creativas:

> (a) Se provee para que un negocio establecido, o que será establecido, en Puerto Rico por una Persona, o combinación de ellas, organizado o no bajo un nombre común, pueda solicitarle al Secretario del DDEC la Concesión de Incentivos económicos cuando la Entidad se establece en Puerto Rico para dedicarse a una de las siguientes actividades elegibles:
>
> (1) Proyectos Fílmicos. — Una Persona podrá obtener un Decreto con relación a un Proyecto Fílmico, siempre y cuando:
>
> (i) la producción o postproducción del Proyecto Fílmico se lleven a cabo en Puerto Rico, parcial o totalmente;
>
> [...]
>
> Para propósitos de este Código, el término "Proyecto Fílmico" significa:
>
> (A) Películas de largometraje
> (B) Películas de cortometraje
> (C) Documentales o producciones de espectáculos en vivo cuya distribución incluya mercados fuera de Puerto Rico durante la transmisión en vivo, tales como certámenes de belleza, producciones de premios, o espectáculos de naturaleza similar.
> (D) Series en episodios, mini-series y programas de televisión de naturaleza similar, incluyendo pilotos y aquellos producidos para distribución digital. Disponiéndose, además, que para todas estas instancias, la pauta, distribución o exhibición fuera de

Puerto Rico no puede ser considerada incidental y mínima.

(E) Anuncios que se exhiban fuera de nuestra jurisdicción, incluyendo campañas compuestas por varios anuncios, siempre y cuando todos los anuncios de la campaña queden acumulados en un solo contrato u orden de compra con Gastos de Producción de Puerto Rico agregados de al menos cien mil dólares ($100,000.00), que cumplan individualmente con los demás requisitos establecidos en este Subcapítulo, excepto el de gasto mínimo dispuesto en el inciso (iii) del párrafo uno (1) de este apartado, y cumplan con cualesquiera otros requisitos que establezca el Secretario del DDEC mediante el Reglamento de Incentivos o carta circular.

(F) Videojuegos

(G) Proyectos de televisión, incluyendo pero sin limitarlo a, programas de tele-realidad, conocidos en inglés como reality shows, de entrevistas, noticiosos, programas de juegos, entretenimiento, comedia y aquellos dirigidos a niños, y de variedad.

(H) La postproducción de uno o varios Proyectos Fílmicos indicados anteriormente siempre que todos los Proyectos Fílmicos se acumulen en un solo contrato u orden de compra con Gastos de Producción de Puerto Rico agregados de al menos cien mil dólares ($100,000.00), que cumplan individualmente con los demás requisitos establecidos en este Código, excepto el de gasto mínimo dispuesto en el inciso (iii) del párrafo uno (1) de este apartado, y cumplan con cualesquiera otros requisitos que establezca el Secretario del DDEC mediante el Reglamento de Incentivos o carta circular.

(I) Festivales de Cine

(J) Videos Musicales

[...]

De otro lado, la Sección 3050.01, 13 LPRA sec. 47051, de la Ley Núm. 60-2019, *supra,* regula lo relacionado a los créditos contributivo para industrias creativas:

A tenor con esta Sección, los Concesionarios dedicados a Proyectos Fílmicos podrán solicitar un Crédito Contributivo, respecto a Gastos de Producción de Puerto Rico (b) Sujeto a las limitaciones, términos y condiciones descritas en esta Sección, el Crédito Contributivo estará disponible para los Concesionarios al inicio de las actividades cubiertas por el Decreto en el caso de Proyectos Fílmicos, **según lo autorice el Secretario del DDEC.** Una vez se cumplan con los requisitos de esta Sección, el Secretario del DDEC certificará la cantidad del Crédito Contributivo aprobado (Énfasis nuestro).

Ahora bien, la concesión de un decreto contributivo está sujeta a la discreción del Secretario del DDEC y al endoso del Departamento de Hacienda. 13 LPRA sec. 48521(i)(2). En todo caso

que se deniegue una solicitud, el Secretario del DDEC vendrá obligado a emitir una notificación electrónica al solicitante, que incluya una breve explicación sobre las razones de la denegatoria, así como las advertencias pertinentes sobre el derecho de reconsideración. 13 LPRA sec. 48521(i)(6).

### C. *Reglamento de Incentivos*

Al amparo de la Ley Núm. 60-2019, *supra*, el DDEC promulgó el *Reglamento de Incentivos*, Reglamento Núm. 9248 de 21 de diciembre de 2020 ("Reglamento Núm. 9248"). Este, tiene el propósito de implementar las normas y reglas que rigen, entre otras cuestiones, el proceso de solicitudes de decretos de exención o beneficios contributivos, así como cualquier otra gestión relacionada a este. Artículo 1000.01-4 del Reglamento Núm. 9248.

En lo atinente, el 27 de octubre de 2022, se promulgó el Reglamento Núm. 9414 intitulado *Enmienda al Reglamento Núm. 9248 del 21 de diciembre de 2020, conocido como "Reglamento de incentivos MO-DEC-013", Reglamento para Implantar las Disposiciones de la Ley Núm. 60-2019, según enmendada, conocida como el "Código de Incentivos de Puerto Rico*". Así pues, por virtud de estas enmiendas, se incorporó lo siguiente:

VII. ENMIENDA AL ARTICULO 3050.01(A)-

Se renumera el anterior Articulo 3050.01(a)-1 como Articulo 3050.01(a)-2 y se enmienda el mismo para que lea como sigue:

**Artículo 3050.01(a)- 2.- Proceso de Solicitud del Crédito Contributivo para Industrias Creativas.**

[…]

g) Para propósitos del comienzo de la Fotografía Principal, los Decretos solo se modificarán si ocurre alguna de las siguientes situaciones:

i. Fuerza mayor: Actos de Dios o de la naturaleza; muerte del productor, director o talento del elenco principal solo cuando es el papel protagónico; guerra; huelgas; disturbios; delincuencia; cambios en la ley; pandemias; imposibilidad.

ii. Circunstancias del elenco en roles clave, como cambios de talento porque el talento está enfermo o no puede desempeñarse.

iii. Consentimiento mutuo para transferir el Decreto a una nueva entidad productora o un nuevo productor para producir el Proyecto Fílmico objeto del Decreto con el consentimiento previo del Secretario del DDEC.

iv. Consentimiento mutuo para transferir el Decreto a un nuevo proyecto producido par la misma entidad productora o el mismo productor con el consentimiento previo del Secretario del DDEC.

### D. Igual protección de las leyes

La Carta de Derechos de la Constitución de Puerto Rico establece que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se le negará la igual protección de las leyes. Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Este principio constitucional "no exige que siempre se dé un trato igual a todos los ciudadanos, sino que prohíbe un trato desigual e injustificado". *Comisionado Electoral v. Pres. CEE et al.*, 215 DPR ___ (2025), 2025 TSPR 54, pág. 23, citando a *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 15-16 (2010). En ese sentido, el derecho constitucional a la igual protección de las leyes no prohíbe que el Estado establezca clasificaciones dirigidas a descargar sus funciones de manera adecuada y eficiente. *P.A.C. v. E.L.A. I*, 150 DPR 359, 378 (2000).

Cuando se cuestione una clasificación al amparo del derecho de igual protección de las leyes, los tribunales deben utilizar uno de los (2) tipos de escrutinios establecidos jurisprudencialmente: el escrutinio estricto o el escrutinio tradicional o de nexo racional. *Comisionado Electoral v. Pres. CEE et al.*, supra. El escrutinio estricto se utiliza cuando la clasificación realizada afecta un derecho fundamental o, cuando se establece una clasificación sospechosa que no guarda relación con la habilidad a la aptitud de las personas afectadas por esta. *López v. E.L.A.*, 165 DPR 280, 299 (2005). En

estos casos, la legislación se presume inconstitucional y el Estado debe probar la existencia de un interés apremiante o de superior jerarquía que lo justifique. *Íd.*

Por otra parte, el escrutinio tradicional mínimo se utiliza cuando la legislación no crea una clasificación sospechosa ni afecta derechos fundamentales. *Berberena v. Echegoyen*, 128 DPR 864, 874 (1991). Así pues, la clasificación no se declarará inválida, salvo que sea claramente arbitraria. *Comisionado Electoral v. Pres. CEE et al.*, supra, pág. 24. Para determinar que una clasificación es arbitraria, quien impugna la misma debe demostrar que no existe un interés estatal legítimo, o que no puede establecerse un nexo racional entre la clasificación y dicho interés del Estado. *Íd.*

### III.

En el presente recurso, la Recurrente nos solicita que revoquemos la *Carta Denegatoria* emitida por el DDEC, el 10 de octubre de 2025. Por virtud del aludido dictamen, la agencia recurrida denegó la solicitud instada por la Recurrente, a los fines de realizar una segunda enmienda al *Decreto* otorgado. En concreto, la Recurrente alude, como primer señalamiento de error, que la agencia recurrida violentó su debido proceso de ley. Como segundo error, señala que el DDEC incidió al denegar la segunda enmienda al Decreto de incentivos contributivos fílmicos para comenzar la fotografía principal del proyecto *The Borinqueneers*. El fundamento esgrimido por la Recurrente para sustentar sus dos (2) señalamientos de error radica en el argumento de que ésta es titular de un derecho propietario por ostentar un beneficio gubernamental. De esta manera, alega que era necesario la cerebración de una vista administrativa en aras de garantizar el debido proceso de ley. Además, la Recurrente sostiene que, en la presente controversia, aplica la doctrina de actos propios. Veamos.

Por encontrarse íntimamente relacionados, discutiremos los dos (2) señalamientos de error esgrimidos por la Recurrente de manera conjunta. Alega la Recurrente que el DDEC violentó su debido proceso de ley, ya que esta agencia no le concedió una vista administrativa. El fundamento para tal argumento parte de la premisa de que el *Decreto* es un contrato entre la Recurrente y el DDEC, mediante el cual, estas partes se obligaron a cumplir con lo dispuesto en el mismo. En ese aspecto, es cierto que, conforme la Ley Núm. 60-2019, *supra*, los decretos son "la concesión, mediante contrato, que emita el Secretario del DDEC permitiendo a un Negocio Elegible, gozar de incentivos y/o créditos contributivos correspondientes a dicho Negocio Elegible, **sujeto a que cumplan con los requisitos y la reglamentación aplicable, ya sea bajo este Código o Leyes de Incentivos Anteriores**" (Énfasis nuestro). 13 LPRA sec. 45012 (a)(20).

Vale destacar, que no existe controversia en torno a si el *Decreto* otorgado el 11 de noviembre de 2024 dispuso **que la fotografía principal debía comenzar en un término de ciento veinte (120) días calendarios, a partir de la firma del mismo**. De igual forma, dicho apartado dispone expresamente que se puede solicitar una prórroga en torno al aludido término, sin embargo, expresamente dispone que la concesión de la misma **quedará a discreción del Secretario del DDEC y a que exista una justa causa para conceder dicha extensión**. Al amparo de tal delegación, el *Decreto* enumera las circunstancias particulares de dan lugar a la justa causa para solicitar la extensión del término antes mencionado. Estas son las siguientes:

> 1. Force majeure: Acts of God or nature; death of producer/director/main cast talent only when it is the starring role; war; strikes; riots; crime; changes in law; pandemics; impossibility.
> 2. Cast circumstances in key roles such as changes in talent given that talent is sick, or talent cannot perform;

3. Mutual assent to transfer the Decree to a new production entity or producer to produce the Film Project object of the Decree with prior consent of the DEDC Secretary;

4. Mutual assent to transfer the Decree to a new project produced by the same production entity or producer with prior consent of the DEDC Secretary.[13]

Lo antes expuesto, sin duda alguna, era de conocimiento de la Recurrente, ya que consta en la declaración jurada firmada el 21 de noviembre de 2025, por el dueño de Borinqueneers Film, LLC, Wayne Anthony Nardolillo, en la cual consta lo siguiente:

**I hereby unconditionally accept the terms and conditions of the Decree of Film Project Exempt and conditions of the Decree of Film Project Exemptions and Tax Credits, provided to Case Number 2024-CIN-000044**, on November 6th, 2024, that grants until March 6th, 2025 to commence uninterrupted principal photography of the Film Project The Borinqueneers (Énfasis nuestro).[14]

Como hemos reseñado previamente, conforme se desprende del expediente, el 18 de febrero de 2025, la Recurrente solicitó una enmienda al Decreto a los fines de que se le concediera una prórroga para el comienzo de la fotografía principal del filme. Aludió su petitorio a lo siguiente: "[e]ntre las razones que nos obligan a modificar la fecha de comienzo de la fotografía principal del proyecto, están los fuegos en California y la alteración de compromisos previos de ciertos actores comprometidos con la producción".[15] Evaluada esta petición, el 25 de marzo de 2025, el Secretario del DDEC concedió la prórroga solicitada y destacó que "the reasons behind such request include conflicting calendars by the film's production team and talent as a consequence of the Los Angeles, California January 2025 wildfires".[16] En ese sentido, la agencia recurrida entendió que existía justa causa y procedió a enmendar el *Decreto,*

---

[13] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 19, pág. 5.
[14] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 7.
[15] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 9, pág. 059.
[16] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 11.

a los fines de cambiar la fecha de inicio de la fotografía principal del filme.

Ahora bien, el 23 de septiembre de 2025, previo a la fecha concedida mediante la primera enmienda al Decreto, la Recurrente, solicitó una segunda enmienda al *Decreto*, y amparó su petitorio en que un nuevo socio financiero de ésta traía "consigo una serie de trámites legales, financieros, de logística y planificación que sin duda alguna dilatan el inicio de la fotografía principal".[17] Por tanto, era necesario posponer la fecha de inicio de la fotografía inicial para junio de 2026. Esta solicitud fue denegada por el DDEC. Nótese que, como mencionáramos, el Secretario del DDEC **tiene la discreción de denegar o aceptar las solicitudes de extensiones**, las cuales deben aludir a **una justa causa** para otorgar la prórroga solicitada. Esta justa causa está recogida en una serie de circunstancias, las cuales surgen del propio *Decreto.* Cónsono con lo anterior, el Artículo 3050.01(a)- 2 (g) del *Reglamento de Incentivos*, Reglamento Núm. 9248, según enmendado, establece que:

> g) Para propósitos del comienzo de la Fotografía Principal, los Decretos **solo** se modificarán si ocurre alguna de las siguientes situaciones:
>
>> i. Fuerza mayor: Actos de Dios o de la naturaleza; muerte del productor, director o talento del elenco principal solo cuando es el papel protagónico; guerra; huelgas; disturbios; delincuencia; cambios en la ley; pandemias; imposibilidad.
>>
>> ii. Circunstancias del elenco en roles clave, como cambios de talento porque el talento este enfermo o no puede desempeñarse.
>>
>> iii. Consentimiento mutuo para transferir el Decreto a una nueva entidad productora o un nuevo productor para producir el Proyecto Fílmico objeto del Decreto con el consentimiento previo del Secretario del DDEC.
>>
>> iv. Consentimiento mutuo para transferir el Decreto a un nuevo proyecto producido par la misma entidad productora o el mismo productor con el consentimiento previo del Secretario del DDEC (Énfasis nuestro).

---

[17] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 11, pág. 066.

Contrario a la primera solicitud de extensión, la cual estuvo justificada por un evento de fuerza mayor, a saber, los incendios forestales en California, la segunda solicitud de enmienda al *Decreto* no contempla ninguna de las circunstancias que justifiquen una extensión al término para dar comienzo a la fotografía principal de un filme. Ello, sumado a la reconocida **discreción** que ostenta el Secretario del DDEC para rechazar solicitudes de extensiones cuando no medie justa causa para ello, nos lleva a la conclusión de que la agencia recurrida **no actuó de manera errada, arbitraria ni prejuiciosa**. A la Recurrente no se le ha despojado de ningún **derecho propietario**, toda vez que los decretos **son beneficios contributivos y no son derechos constitucionales**. En el presente caso, la Recurrente simplemente incumplió con las claras disposiciones contenidas en el *Decreto*.

Asimismo, es menester destacar que la Recurrente no tiene derecho a cerebración de vista alguna. El dictamen recurrido no canceló el *Decreto*, sino que meramente denegó una solicitud de enmienda a dicho documento. En otras palabras, no estamos ante un proceso adjudicativo que permita invocar el derecho a una vista administrativa conforme lo establece la LPAU. De igual forma, la propia Ley Núm. 60-2019, *supra*, dispone en su Sección 6020.09 (b), 13 LPRA sec. 48529, que "[e]n los casos de revocación de un Decreto concedido bajo este Código, el Concesionario tendrá la oportunidad de comparecer y ser oído en una vista ante un empleado del DDEC designado para ese fin, quien informará sus conclusiones y recomendaciones al Secretario del DDEC". Tampoco se encuentra presente esta circunstancia, pues la determinación recurrida no revocó el *Decreto*.

Asimismo, en el caso de marras, no cabe hablar de la doctrina de actos propios, tal y como alega la Recurrente, pues es norma

firmemente reiterada en nuestra jurisdicción que la doctrina de *estoppel* y actos propios "de ordinario, no aplican en contra del Estado cuando hay de por medio una cuestión de interés público implicada". *Rivera et al. v. Torres et al.*, 214 DPR 111, 171 (2024). Como corolario de ello, la jurisprudencia ha explicado que esta doctrina "no aplica de forma general a las relaciones de partes privadas frente al Gobierno y se ha limitado únicamente a que un demandante pueda invocar en contra del Estado la doctrina de los actos propios en circunstancias apropiadas". *Íd.*, pág. 171–172.

En esa dirección, la doctrina de actos propios puede ser utilizada contra el Estado en situaciones en las que no se afecte el interés público y en las que pueda ocurrir una clara injusticia. *Íd.* No obstante, somos del criterio, que Borinqueneers no ha demostrado la existencia de una clara injusticia, máxime cuando fue la propia Recurrente quien incumplió en establecer justa causa para la extensión de término conforme lo exige el Reglamento Núm. 9248 y el propio *Decreto*. De igual forma, vale destacar el interés público del Estado de uniformar y fiscalizar la concesión y manejo de los incentivos contributivos contenidos en la Ley Núm. 60-2019. Por tanto, es menester que las partes sigan las pautas establecidas en el Decreto y los reglamentos aplicables.

En fin, recapitulamos, luego de un examen cuidadoso del expediente ante nuestra consideración, por los fundamentos que anteceden, determinamos que los señalamientos de error esgrimidos por la Recurrente no se cometieron. El DDEC no abusó de su discreción al denegar una segunda solicitud para enmendar el *Decreto* con el fin de cambiar la fecha para comenzar la fotografía principal del filme *The Borinqueneers*, la cual no estuvo sustentada por ninguno de los supuestos de justa causa contenidos en el Reglamento Núm. 9248 y en el *Decreto*. Tal actuación de la agencia

recurrida no violentó le debido proceso de ley de la Recurrente, por lo que corresponde confirmar el dictamen recurrido.

**VI.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones